**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Frank T. McCOWN,
Defendant-Appellant.**

**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Gary Lee BARNES, Defendant-Appellant.**

**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Gary Leslie BARNES,
Defendant-Appellant.**

**Nos. 82–1316, 82–1319 and 82–1343.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 15, 1983.

Decided Aug. 2, 1983.

Philip J. MacDonald, Asst. U.S. Atty., Tucson, Ariz., for plaintiff-appellee.

Richard C. Henry, Edwin B. McLean, Michael L. Piccarreta, Tucson, Ariz., for defendants-appellants.

Before FAIRCHILD,* CHOY, and SNEED, Circuit Judges.

CHOY, Circuit Judge:

Appellants were convicted of various counts relating to a conspiracy to distribute and actual distribution of cocaine and firearms. Each appellant challenges his conviction on numerous grounds. We affirm the conviction of each appellant on all counts against him.

I. *Background*

Frank T. McCown, Gary Lee Barnes (Barnes, Sr.), and Barnes, Sr.'s son, Gary Leslie Barnes (Barnes, Jr.), were indicted as a result of a joint undercover investigation by agents of the Drug Enforcement Administration and the Bureau of Alcohol, Tobacco, and Firearms. The investigation began on May 27, 1981, when an undercover agent, Robert Candelaria, initiated telephone contact with Barnes, Jr. During the conversation, Barnes, Jr., stated that he owned some firearms that he could convert to automatic weapons and that he was willing to sell these weapons. During subsequent conversations, Barnes, Jr., discussed with agent Candelaria other firearms he had in his possession or could obtain and mentioned sales prices. Barnes, Jr., also discussed a possible cocaine sale with Candelaria and other undercover agents participating in the investigation.

On June 17, 1981, the first face-to-face meeting between the agents and Barnes, Jr., occurred, and the firearms sale was discussed. Barnes, Jr., stated that he had access to large amounts of cocaine and that

---

* The Honorable Thomas E. Fairchild, Senior United States Circuit Judge for the Seventh Circuit, sitting by designation.

he was interested in trading cocaine for marijuana if the agents could supply sufficient quantities of marijuana. During the meeting, Barnes, Jr., gave agent Candelaria a small quantity of cocaine as a sample.

At a later meeting, Barnes, Jr., delivered an automatic firearm to Candelaria in exchange for $800. At the time of this exchange, Barnes, Jr., agreed to trade 10 ounces of cocaine, two more converted firearms, and $130,000 cash with Candelaria in exchange for 1,000 pounds of marijuana.

Barnes, Jr., later refused to go through with the deal until he was furnished with a sample of the marijuana he would receive from the agents. During negotiations concerning the delivery of the sample, Barnes, Jr., represented that his father, Barnes, Sr., was working with him on the deal. Barnes, Sr., was present when the agents gave Barnes, Jr., approximately six ounces of marijuana as a sample of the 1,000 pounds purportedly to be exchanged. At a subsequent meeting, Barnes, Sr., gave the agents a check for $130,000 (which the agents knew to be worthless) as a sign of his good faith in the deal.

On August 6, 1981, Barnes, Jr., met two undercover agents outside a restaurant, where he sold them a sample of cocaine for $100. Barnes, Jr., told the agents that the source of the sample had access to pounds of cocaine. When agent Candelaria asked to meet the source, Barnes, Jr., went inside the restaurant and shortly returned with appellant McCown. Barnes, Jr., introduced McCown to the agents as a dealer in pound quantities of cocaine who could make cocaine available to the agents in exchange for marijuana.

Both McCown and Barnes, Sr., had later phone conversations with the agents in order to discuss further exchanges of samples and to negotiate transactions.

On December 15, 1981, a 17-count indictment was filed alleging various narcotics and firearms violations by the appellants and five other persons.[1]

Appellant McCown was indicted on the following counts:

1. Conspiring to distribute marijuana and cocaine;

14. Unlawfully distributing cocaine;

15, 16. Unlawfully using a communication facility; and

17. Unlawfully possessing cocaine with intent to distribute.

The district court severed Count 17 from the remaining counts for purposes of trial. However, McCown was ultimately found guilty of all counts. McCown was sentenced to 5 years imprisonment on each of Counts 1, 14, and 17, and 4 years imprisonment on each of Counts 15 and 16, all terms to run concurrently. The trial court also imposed a special parole term on each of Counts 14 and 17, both terms to run concurrently.

Appellant Barnes, Sr., was indicted on the following counts:

1. Conspiring to distribute cocaine and marijuana;

8. Conspiring to transfer a machine gun; and

10. Unlawfully transferring a machine gun.

Barnes, Sr., was found guilty of all counts and sentenced to 8 years imprisonment on each of Counts 1 and 10, and 5 years imprisonment on Count 8, all sentences to run concurrently.

Appellant Barnes, Jr., was indicted on the following counts:

1. Conspiring to distribute cocaine and marijuana;

2, 14. Unlawfully distributing cocaine;

3, 8. Conspiring to transfer a machine gun unlawfully;

4, 5, 9. Receiving firearms while under indictment for a felony;

1. Three of the five others named in the indictment entered into felony plea-bargain agreements with the Government. One co-defendant pled guilty to a misdemeanor. The fifth was acquitted of the one count against him by a jury. In order to simplify this summary of the case, the roles of these five persons in the criminal activity have been ignored.

6, 10. Unlawfully transferring a machine gun; and

7, 11, 12, 13. Unlawful use of a communication facility.

The jury found Barnes, Jr., guilty of all 14 counts. He was sentenced to 6 years imprisonment on each of Counts 1, 2, 6, 10, and 14, 5 years imprisonment on Counts 3, 4, 5, 8, and 9, and 4 years imprisonment on each of Counts 7, 11, 12, and 13, all sentences to run concurrently with each other but consecutively to a previous 4-year term of imprisonment imposed for unlawful transportation of an illegal alien. In addition, Barnes, Jr., received a 10-year special parole term on Counts 2 and 14, and a $25,000 fine was imposed on Count 2.

Each appellant challenges his conviction on several grounds. Appellant McCown contends that one count against him should have been dismissed for failure to comply with the Speedy Trial Act. McCown further claims that the district court erred in refusing to sever all counts against him from those against the other defendants for purposes of trial. Barnes, Sr., and Barnes, Jr., contend that all charges against them should have been dismissed because of government misconduct, that the indictment against them on Count 1 was constitutionally insufficient, and that the district court erred in admitting the guilty plea of a co-defendant as evidence against them. Barnes, Jr., complains that the district court violated Fed.R.Crim.P. 30 and also erred in admitting testimony by Kelly Barnes that should have been excluded under the marital communication privilege. All three appellants claim that the district court erroneously admitted evidence of their prior bad acts. Few of these contentions present us with novel questions.

2. The only difference between the November 3 indictment and Count 17 of the December 15 indictment is that the former refers to the appellant as "Frank Timothy McCown," while the latter uses the name "Frank T. McCown."

3. 18 U.S.C. § 3161(b) reads:
   Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date

## II. *Speedy Trial Act Claim*

Appellant McCown was arrested on October 9, 1981, after negotiating a deal with undercover agents whereby McCown would transfer to the agents cocaine in exchange for marijuana. On November 3, 1981, a federal grand jury indicted McCown for possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). McCown was then indicted by the same grand jury on December 15, 1981, on several charges set forth in the 17-count indictment in the instant case. The same incidents formed the basis for both the single count of the November 3 indictment and Count 17 of the December 15 indictment; indeed, the two counts are identical in language.[2] Because of the identity of the two counts, the trial court granted, on December 18, 1981, the Government's motion to dismiss the November 3 indictment.

McCown then moved to dismiss Count 17 of the December 15 indictment on the ground that the timing of the issuance of the indictment violated a provision of the Speedy Trial Act, 18 U.S.C. § 3161. The district court denied the motion, McCown was convicted of Count 17, and he now appeals the district court's failure to dismiss. McCown relies on 18 U.S.C. § 3161(b), which provides that an indictment charging an individual with the commission of an offense must be filed within 30 days from the date on which the individual was arrested in connection with that charge, and 18 U.S.C. § 3162(a)(1), which provides that dismissal is the sanction for violation of § 3161(b).[3] According to McCown, since he was arrested on October 9, 1981, but was not indicted for the incidents that led to that arrest until December 15, 1981, he was not indicted within the required 30-day period, and his indictment

on which such individual was arrested or served with a summons in connection with such charges. If an individual has been charged with a felony in a district in which no grand jury has been in session during such thirty-day period, the period of time for filing of the indictment shall be extended an additional thirty days.

on Count 17 should have been dismissed pursuant to § 3162(a)(1). We cannot agree with McCown's reasoning.

In making a Speedy Trial Act claim to the district court, McCown's counsel argued that § 3161(d) "says even in the event of a subsequent indictment, the original thirty-day period is the period that applies." The language of § 3161(d) is not straightforward. It provides that where the indictment is dismissed upon motion of the defendant and a subsequent complaint is filed against the defendant charging him with the same offense or an offense based on the same conduct, "the provisions of [§ 3161] shall be applicable with respect to such subsequent complaint, indictment, or information, as the case may be." 18 U.S.C. § 3161(d)(1) (Supp. IV 1980).[4]

■ Other courts have interpreted this language to mean that where the indictment is dismissed upon motion of the defendant, the slate is wiped clean, and any subsequent step toward prosecution of the defendant causes the time period to begin running anew. *United States v. Dennis,* 625 F.2d 782, 793 (8th Cir.1980); *United States v. Hillegas,* 578 F.2d 453, 459–60 (2d Cir.1978); *United States v. Sebastian,* 428 F.Supp. 967, 973 (W.D.N.Y.), *aff'd,* 562 F.2d 211 (2d Cir.1977), *aff'd mem.,* 578 F.2d 1372 (2d Cir.1978). We are convinced that this is a correct interpretation of the statute, particularly in light of the legislative history:

> To require a prosecutor to conform to indictment and trial time limits which were set by the filing of the original complaint in order to reopen a case on the basis of new evidence would be an insurmountable burden. Thus, when subsequent complaints are brought, the time limits will begin to run from the date of the filing of the subsequent complaint.

S.Rep. No. 1021, 93d Cong., 2d Sess. 33 (1974).

■ Not only is McCown's interpretation of § 3161(d)(1) incorrect, but that section is inapplicable to the present case in any event. Section 3161(d)(1) applies where the indictment is dismissed upon motion of the defendant. Here, the indictment was dismissed upon motion of the Government. Initially, therefore, we look to § 3161(h)(6), which provides that if the first indictment is dismissed upon the motion of the Government, "any period of delay from the date the charge was dismissed to the date the time limitation would commence to run as to the subsequent charge had there been no previous charge" is excluded in computing the time within which an indictment must be filed. In other words, the time period is merely tolled during the period when no indictment is outstanding; the time period does not begin to run anew. *Dennis, supra,* 625 F.2d at 793; *Hillegas, supra,* 578 F.2d at 459; *Sebastian, supra,* 428 F.Supp. at 973; Frase, *The Speedy Trial Act of 1974,* 43 U.Chi.L.Rev. 667, 696 (1976).

Unfortunately, even § 3161(h)(6) does not provide guidance in computing the proper time period here. Section 3161(h)(6) contemplates a situation where the first indictment is dismissed before the second indictment is issued; we are faced with a situation where issuance of the second indictment preceded dismissal of the first.

McCown contends that since the statute contains no tolling provision specifically applicable to his case, this situation is governed by the general rule set forth in § 3161(b), providing that "[a]ny information or indictment charging an individual with commission of an offense shall be filed within thirty days" of arrest (emphasis added). Thus McCown argues that, regardless

---

4. 18 U.S.C. § 3161(d)(1) (Supp. IV 1980) reads:
    If any indictment or information is dismissed upon motion of the defendant, or any charge contained in a complaint filed against an individual is dismissed or otherwise dropped, 'and thereafter a complaint is filed against such defendant or individual charging him with the same offense or an offense based on the same conduct or arising from the same criminal episode, or an information or indictment is filed charging such defendant with the same offense or an offense based on the same conduct or arising from the same criminal episode, the provisions of subsections (b) and (c) of this section shall be applicable with respect to such subsequent complaint, indictment, or information, as the case may be.

of when the first indictment was filed against him, any subsequent indictment must also have been issued within 30 days of his arrest. The argument is supported by the decision in *United States v. Shuskey,* 488 F.Supp. 760 (E.D.N.C.1980). In that case, the district court found that subsequent, corrective indictments violated a provision in the local speedy trial plan that was similar to 18 U.S.C. § 3161(b):

> In a situation like the instant one in which charges were pending at the time of re-indictment, the superseding indictment must be filed within the time limits applicable to the original indictment. Since that time limit was thirty (30) days, there is a clear violation of the Speedy Trial Plan here. The plan says "any" indictment must be filed in Thirty (30) days, and it means "any".

*Id.* at 762. The court in *Shuskey* went on to say that had the federal Speedy Trial Act been in effect at the time of that case, the court would have dismissed the indictment under § 3162(a). *Id.* at 763.

We do not agree with this dictum in *Shuskey,* for we conclude that the language of § 3161(b) is not dispositive of the question of whether a subsequent indictment, issued before the first indictment is dismissed, must be issued within 30 days of the initial arrest. Section 3161(b) is directive in nature; it does not provide sanctions for its violation. Section 3161(b) cannot properly be construed independently of § 3162(a)(1) and the purposes of the Speedy Trial Act. *United States v. Candelaria,* 704 F.2d 1129, 1131 (9th Cir.1983). Sanctions for the violation of § 3161(b) are set forth in § 3162(a)(1), which reads, in pertinent part:

> If, in the case of any individual against whom a complaint is filed charging such individual with an offense, *no* indictment or information is filed within the time limit required by section 3161(b) as extended by section 3161(h) of this chapter, such charge against that individual contained in such complaint shall be dismissed or otherwise dropped.

(Emphasis added.) This is not a case where no indictment was filed within the requisite 30 days; the November 3 indictment was filed well within the 30-day limitation period. Thus, the language of § 3162(a)(1) does not support dismissal of McCown's indictment on Count 17.

The legislative history of the Speedy Trial Act gives little insight into the purpose behind the 30-day arrest-to-indictment time limit. In fact, the only really pertinent piece of legislative history is brief mention of 1970 and 1972 studies by the Federal Judicial Center which found that the "average delay between arrest and indictment in the busier federal courts was over 100 days." S.Rep. No. 1021, 93d Cong., 2d Sess. 7 (1974). Apparently, Congress felt that the 100-day average was unacceptably long.

Since the legislative history of the Act itself is of little help, we find it necessary to look to the purposes of an indictment in determining the purpose furthered by requiring a speedy indictment. The Supreme Court has measured the sufficiency of an indictment against two stated purposes of that document: (1) to apprise the defendant of the charges against which he must be prepared to defend himself; and (2) to give the defendant a clear statement of the allegations against him in order to enable him to raise them as a bar to subsequent prosecution. *See Russell v. United States,* 369 U.S. 749, 763–64, 82 S.Ct. 1038, 1046–47, 8 L.Ed.2d 240 (1962); *Hagner v. United States,* 285 U.S. 427, 431, 52 S.Ct. 417, 419, 76 L.Ed. 861 (1932); *United States v. Buckner,* 610 F.2d 570, 573 (9th Cir.1979), *cert. denied,* 445 U.S. 961, 100 S.Ct. 1646, 64 L.Ed.2d 235 (1980).

Since only the first of these purposes relates to the period before trial, Congress no doubt had this purpose in mind when setting a time limit within which an indictment must be issued. We note, as have various other courts, that because of delay in indictment, a defendant may lose access to potentially exculpatory witnesses or evidence. *See, e.g., United States v. Marion,* 404 U.S. 307, 331, 92 S.Ct. 455, 468, 30 L.Ed.2d 468 (1971) (Douglas, J., concurring); *United States v. Jackson,* 504 F.2d 337, 340

(8th Cir.1974), *cert. denied,* 420 U.S. 964, 95 S.Ct. 1356, 43 L.Ed.2d 442 (1975).

Had the Government moved to dismiss Count 17 of the December 15 indictment while leaving the November 3 indictment intact, McCown would have faced indictment on the same charge and would have had no cognizable Speedy Trial Act claim. We fail to see how the issuance of Count 17 of the second indictment could have hampered McCown in preparing a defense.[5] Because the November 3 indictment and Count 17 of the December 15 indictment were identical, McCown was on notice of the charges against him since November 3. Also, the identical language of the two charges makes it implausible that McCown could have been confused about the actual charges against him (e.g., by thinking the November 3 indictment and Count 17 charged him with two different crimes) during the 3 days when both indictments were outstanding.

In addition, the trial judge allowed severance of Count 17 from the rest of the counts contained in the December 15 indictment. This severance protected McCown from any prejudice he might have suffered if he had been in the position of defending against Count 17 at the same time he had to defend himself against various other charges.

The issuance of Count 17 did not allow the Government to delay trial on that charge beyond the time limit that would have applied had McCown been tried on the basis of the November 3 indictment. Section 3161(c)(1) requires that trial commence within 70 days of arraignment or indictment, whichever is later. For the purpose of measuring compliance with this provision, the district court deemed the time period to run from McCown's initial November 10 arraignment.

■ Therefore, in light of the statutory provisions and the purpose behind them, we hold that McCown's indictment and subsequent prosecution on Count 17 of the December 15 indictment did not violate his rights under the Speedy Trial Act.

### III. *Severance*

McCown sought to have the counts against him severed from those against his co-defendants for purposes of trial. The district court granted his request only with respect to Count 17 (possessing cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1)). McCown argues that he was entitled to severance under *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), because of the prejudicial effect of inculpatory statements made by Barnes, Sr. McCown also argues that he was unfairly prejudiced because of his association with Barnes, Sr., and Barnes, Jr., who were depicted throughout the trial as "despicable individuals constantly and relentlessly engaging in their unlawful pursuits." According to McCown, only a severance could have prevented a "spillover" or "transference" of guilt from his co-defendants to him.

■ We note first that the *Bruton* rule is inapplicable to this case. In *Bruton,* the Supreme Court held that admission at a joint trial of a co-defendant's confession implicating the defendant violated the defendant's sixth amendment right to confrontation. The inculpatory statements which form the basis of McCown's *Bruton* claim were not statements made in a confession, but were statements made by Barnes, Sr., in furtherance of a conspiracy.

■ The co-conspirator statements of which McCown complains were admissible under the co-conspirator exception to the

---

**5.** We conduct an inquiry as to whether McCown suffered any actual prejudice only because the statutory language does not apply squarely to the situation at hand. Were the statute squarely to address the types of circumstances with which we are now faced, the ex-

istence or nonexistence of actual prejudice would be irrelevant to the decision of whether or not the indictment should have been dismissed. *See United States v. Antonio,* 705 F.2d 1483 at 1484–85 (9th Cir.1983).

hearsay rule, for there was independent evidence that a conspiracy existed, that the statements were made in furtherance of that conspiracy, and that McCown had knowledge of the conspiracy and participated in it. Fed.R.Evid. 801(d)(2)(E); *United States v. Federico,* 658 F.2d 1337, 1342 (9th Cir.1981); *United States v. Fielding,* 645 F.2d 719, 726 (9th Cir.1981); *see United States v. Weaver,* 594 F.2d 1272, 1274 (9th Cir.1979). Admission of the co-conspirator statements did not jeopardize McCown's sixth amendment right to confrontation, since the admitted statements substantially met the indicia of reliability set forth by the Supreme Court in *Dutton v. Evans,* 400 U.S. 74, 88–89, 91 S.Ct. 210, 219, 27 L.Ed.2d 213 (1970) (plurality opinion). *See United States v. Snow,* 521 F.2d 730, 734–35 (9th Cir.1975), *cert. denied,* 423 U.S. 1090, 96 S.Ct. 883, 47 L.Ed.2d 101 (1976). Thus, we are left with only the claim that severance should have been granted to prevent transference of guilt from the other defendants to McCown. The decision of whether or not to sever is left to the discretion of the district court. *United States v. Abushi,* 682 F.2d 1289, 1296 (9th Cir.1982); *United States v. Davis,* 663 F.2d 824, 832 (9th Cir. 1981); *United States v. Donaway,* 447 F.2d 940, 943 (9th Cir.1971). We stated in *Abushi* that "[t]he test for determining whether the district court abused its discretion is whether a joint trial was so manifestly prejudicial as to require the trial judge to exercise his discretion in but one way, by ordering a separate trial." 682 F.2d at 1296. McCown's allegations are not sufficient to warrant reversal under the very restrictive standard of review applicable to this question.

The district court properly informed the jury concerning which defendants were charged in each count. McCown has "failed to show an inability on the part of the jury to compartmentalize the evidence" as it related to him. *United States v. Davis, supra,* 663 F.2d at 833 (quoting *United States v. Ford,* 632 F.2d 1354, 1374 (9th Cir.1980), *cert. denied,* 450 U.S. 934, 101 S.Ct. 1399, 67 L.Ed.2d 369 (1981)). Therefore, the district court did not abuse its discretion in granting severance only with respect to Count 17. *See United States v. Davis, supra,* 663 F.2d at 833.

## IV. Alleged Government Misconduct

Barnes, Sr., and Barnes, Jr., contend that the indictment against them should have been dismissed because of alleged government misconduct during the undercover investigation. Specifically, the two appellants urge that government agents acted improperly in distributing "samples" of marijuana to them with little concern as to what was to become of the contraband and without attempting to retrieve it. Undercover agents distributed two samples to Barnes, Sr., and his son. One contained approximately six ounces of marijuana and the other contained two to five ounces. Barnes, Sr., also alleges that the undercover agents did not obtain permission from their superiors to distribute the second sample.

This circuit has held that governmental misconduct warrants dismissal of an indictment "only when the government's misconduct is so grossly shocking and so outrageous as to violate the universal sense of justice." *United States v. Bagnariol,* 665 F.2d 877, 883 (9th Cir.1981) (per curiam) (quoting *United States v. Ryan,* 548 F.2d 782, 789 (9th Cir.1976), *cert. denied,* 429 U.S. 939, 97 S.Ct. 354, 50 L.Ed.2d 308 (1976), and 430 U.S. 965, 97 S.Ct. 1644, 52 L.Ed.2d 356 (1977)), *cert. denied,* 456 U.S. 962, 102 S.Ct. 2040, 72 L.Ed.2d 487 (1982). We recently noted in *United States v. Lomas,* 706 F.2d 886, 890–91 (9th Cir.1983), that there have been only two federal appellate cases squarely upholding an outrageous government conduct argument: *United States v. Twigg,* 588 F.2d 373, 380–81 (3d Cir.1978), and *Greene v. United States,* 454 F.2d 783, 786–87 (9th Cir.1971). While not limiting the government misconduct argument to the specific activity in *Twigg* and *Greene,* we did note that in both those cases the defendants "would not have had the capaci-

ty to commit the crimes with which they were charged without the government's assistance." *Lomas,* 706 F.2d at 891. "In both cases the government not only provided resources for the production of contraband, but bore primary responsibility for its manufacture." *Id.* The questionable actions of the government agents in the present case are not of the same magnitude.

We find that the misconduct alleged here is not "grossly shocking" or "outrageous" and so does not warrant dismissal of the charges against the appellants. The Supreme Court's statement in *Hampton v. United States,* 425 U.S. 484, 490, 96 S.Ct. 1646, 1650, 48 L.Ed.2d 113 (1976) (plurality opinion), seems particularly apt:

> If the police engage in illegal activity in concert with a defendant beyond the scope of their duties the remedy lies, not in freeing the equally culpable defendant, but in prosecuting the police under the applicable provisions of state or federal law.

### V. *Sufficiency of Indictment*

Appellants Barnes, Sr., and Barnes, Jr., contend that Count 1 of the indictment against them, which charges them with conspiracy to distribute cocaine and marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 846, is constitutionally insufficient and, therefore, should have been dismissed. We do not agree.

In general, the Supreme Court has held that in order to be sufficient, an indictment must set forth the elements of the offense and contain a statement of the facts adequate to inform the accused of the specific offense with which he is charged. *Hamling v. United States,* 418 U.S. 87, 117–18, 94 S.Ct. 2887, 2907–08, 41 L.Ed.2d 590 (1974). More specifically, this court has held that:

> An indictment under 21 U.S.C. § 846 is sufficient if it alleges: "a conspiracy to distribute drugs, the time during which the conspiracy was operative and the statute allegedly violated, even if it fails

to allege or prove any specific overt act in furtherance of the conspiracy."

*United States v. Tavelman,* 650 F.2d 1133, 1137 (9th Cir.1981) (quoting *United States v. Marable,* 578 F.2d 151, 154 (5th Cir.1978), *overruled on other grounds, United States v. Rodriguez,* 612 F.2d 906, 919 & n. 35 (5th Cir.1980) (en banc), *aff'd sub nom. Albernaz v. United States,* 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981)), *cert. denied,* 455 U.S. 939, 102 S.Ct. 1429, 71 L.Ed.2d 649 (1982).

■ Appellants allege that Count 1 is defective in that it fails to state with specificity the time during which the conspiracy was operative. Count 1 alleges that the conspiracy continued "from on or about June 17, 1981, to on or about October 10, 1981." Appellants contend that this language suffers from the same infirmity that this court found in *United States v. Cecil,* 608 F.2d 1294 (9th Cir.1979), where we found to be insufficient an indictment alleging a conspiracy "beginning on or before July, 1975, and continuing thereafter until on or after October, 1975." *Id.* at 1297. As we noted in *Cecil,* the problem with the language in that indictment is that it was open-ended in both directions. *Id.* The phrases "on or before" and "on or after" serve to obscure the beginning and end points of the conspiracy, making it impossible to place the alleged illegal activity within a time frame. *See Tavelman,* 650 F.2d at 1137.

■ In contrast, Count 1 of the present indictment gives specific beginning and ending dates for the alleged conspiracy. Use of the term "on or about" does not open the time frame indefinitely, as did use of the terms "on or before" and "on or after." While the terms "on or before" or "on or after" a certain date encompass millennia, the term "on or about" at most opens the time frame by one or two days, and merely serves to prevent any dickering over the small technicality of an exact date.

■ Count 1 of the indictment states with sufficient specificity the time during

which the conspiracy was operative, states the purpose of the conspiracy ("to distribute cocaine and marijuana"), cites the statutes allegedly violated (21 U.S.C. §§ 841(a)(1) and 846), gives the approximate location of the conspiratorial activities ("at or near Nogales, Tucson, and Phoenix"), and names some of the co-conspirators. The indictment was sufficient to inform the appellants of the specific charge against them, and the district court did not err in refusing to dismiss Count 1.

## VI. *Evidence of Co-Defendant's Guilty Plea*

■ Both Barnes, Sr., and Barnes, Jr., complain that they were unfairly prejudiced by the testimony of Mark Stewart (a co-defendant in this case) that he (Stewart) had pled guilty to one of the conspiracy counts in the indictment.[6] However, testimony of the guilty plea was first elicited by counsel for Barnes, Jr., in an attempt to show possible bias on the part of the witness. When the prosecutor delved into the subject of the plea agreement, he was trying to rehabilitate the credibility of witness Stewart by showing that Stewart, who was at the time unsentenced, might face a greater penalty if he were to perjure himself. Counsel for Barnes, Jr., opened the door to discussion of Stewart's guilty plea and did not object to the prosecutor's cross-examination concerning the guilty plea until the prosecutor asked about the ramifications of Stewart's committing perjury on his pending sentence. *Cf. United States v. Naylor,* 566 F.2d 942, 943 (5th Cir.1978) (not reversible error, but valid trial strategy, for defendant's counsel to elicit testimony that co-defendant pled guilty). Counsel for Barnes, Sr., did not object at any time to the prosecution's questioning of Stewart concerning the guilty plea. Therefore, neither can now claim that he was unduly prejudiced by admission of this evidence.

**6.** Mr. Stewart is one of the three co-defendants who entered into felony plea bargain agree-

■ Moreover, on the next day of trial following Stewart's testimony, the district court judge acknowledged that he was wrong in allowing the prosecutor to bolster Stewart's credibility by introducing evidence that Stewart feared that he would receive a stiffer sentence if he were to commit perjury. *See United States v. Roberts,* 618 F.2d 530, 536 (9th Cir.1980) (possibility of improper vouching where plea agreement containing promise to testify truthfully is introduced). The judge then instructed the jury to disregard that part of Stewart's testimony. Appellants argue that the district court's instruction was insufficient to correct the error since that instruction focused on the jury's inability to consider the guilty plea with respect to the credibility of the witness. While credibility was the focus of the instruction, the judge ended his statement by saying: "I'm going to order that question and that answer stricken from the record, and you are to ignore it completely, just as if it never happened." In addition, the jury instructions contained an admonition that a plea of guilty by another person could not be considered as substantive evidence of the guilt or innocence of any of the defendants. We find that the trial judge's instructions to the jury were sufficient to correct any error he may have made in initially admitting the evidence. *See United States v. Berry,* 627 F.2d 193, 198 (9th Cir.1980), *cert. denied,* 449 U.S. 1113, 101 S.Ct. 925, 66 L.Ed.2d 843 (1981).

## VII. *Rule 30 Claim*

■ Barnes, Jr., requested a jury instruction concerning the entrapment defense. Until closing argument, the trial judge stated that he would not grant that request. However, after closing argument, the judge sua sponte reversed his earlier ruling and decided to give an instruction on the entrapment defense. Barnes, Jr., argues that this action violated Fed.R.Crim.P.

ments with the Government. *See supra,* n. 1.

30[7] and was reversible error, since the late decision to give the instruction led his attorney to allude only briefly to the entrapment defense in closing argument and deprived him of the opportunity to effectively argue entrapment before the jury.

We have held that a district court's failure to comply with Rule 30 is reversible error "only if counsel's closing argument was prejudicially affected thereby." *United States v. Harvill,* 501 F.2d 295, 296–97 (9th Cir.1974); *see United States v. Wycoff,* 545 F.2d 679, 683 (9th Cir.1976), *cert. denied,* 429 U.S. 1105, 97 S.Ct. 1105, 51 L.Ed.2d 556 (1977). The potential for prejudice is often great when the trial judge allows defense counsel to proceed with closing argument under the mistaken assumption that the jury will receive a certain instruction. In such a case, defense counsel may well tailor closing argument to emphasize an instruction that the jury never receives, thus impairing the effectiveness of the argument. There also looms the possibility that the actual jury instruction may contradict or repudiate the thrust of closing argument. *See Harvill,* 501 F.2d at 297; *Wright v. United States,* 339 F.2d 578, 580 (9th Cir.1964).

However, the situation with which we are faced is not one where defense counsel made closing argument under the mistaken assumption that the trial judge would give a certain instruction. Rather, here counsel for Barnes, Jr., made his argument believing that the trial judge would not give the jury an instruction as to the entrapment defense. We faced a similar situation in *United States v. Wycoff, supra,* 545 F.2d at 683. In that case, the trial judge gave an instruction concerning excuse or justification after counsel for the defendant had made closing argument without arguing excuse. We found that since there was no

evidence from which counsel could have argued excuse, the trial judge's failure to comply with Rule 30 was harmless error. *Id.*

In the present case, we find no substantial evidence of entrapment. The jury instruction on entrapment was merely superfluous. Its inclusion after closing argument did not prejudice Barnes, Jr., since the evidence would not have supported a finding of entrapment even if that defense had been more strenuously urged upon the jury. Therefore, we refuse to reverse the conviction of Barnes, Jr., on the basis of the trial judge's noncompliance with Fed.R.Crim.P. 30.

## VIII. *Marital Communication Privilege*

■ Barnes, Jr., contends that certain testimony by his wife, Kelly, should have been excluded on the ground that it was protected by the marital communication privilege. When asked who had instructed her to write out a check (which was later used by co-defendants Mark Stewart and Sterling Beasley to purchase a firearm at a Phoenix pawn shop), Kelly Barnes responded, "My husband." We hold that the marital communication privilege is not applicable to this testimony by Kelly Barnes.

■ The marital communication privilege applies to utterances or expressions between husband and wife that are intended to be communicative and confidential. *United States v. Lefkowitz,* 618 F.2d 1313, 1318 (9th Cir.1980); *United States v. Lustig,* 555 F.2d 737, 748 (9th Cir.1977), *cert. denied,* 434 U.S. 1045, 98 S.Ct. 889, 54 L.Ed.2d 796 (1978). The circumstances indicate that Barnes, Jr., did not intend the instruction to his wife to write the check to be confidential. Mark Stewart testified that he and Beasley went to a pawn shop

7. Fed.R.Crim.P. 30 reads, in pertinent part:

At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. At the

same time copies of such requests shall be furnished to adverse parties. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the court shall instruct the jury after the arguments are completed.

and purchased a firearm at the direction of Barnes, Jr. The check Barnes, Jr., gave Stewart and Beasley to cover the purchase was the check written by Kelly Barnes. The obvious inference under the circumstances was that Barnes, Jr., had directed his wife to write the check, and there is no indication that he intended to keep the instruction to his wife secret or hidden from Stewart and Beasley (both of whom were living in the same house with Barnes, Jr., and his wife at the time). *See Pereira v. United States,* 347 U.S. 1, 6, 74 S.Ct. 358, 361, 98 L.Ed. 435 (1954) (communication made to or in presence of third parties not intended to be confidential); *Grulkey v. United States,* 394 F.2d 244, 246 (8th Cir. 1968) (communication by letter to wife not intended to be confidential where husband knew that wife had difficulty reading and anticipated that third party would read communication to her).

## IX. *Prior Bad Acts*

All three appellants cite as error the district court's admission of evidence of prior bad acts they had committed. None of these admissions constituted reversible error.

### A. *McCown*

■ Appellant McCown claims that his conviction on Count 17 should be dismissed because of the admission of several pieces of evidence of prior bad acts. McCown first challenges testimony by undercover agent Cortez that McCown refused to show him some cocaine, saying, "[W]e are not used to flashing it in public." This statement, McCown contends, very likely led the jury to infer that McCown had been involved in that type of activity on previous occasions.

However, McCown did not object to the admission at the time of the testimony; he moved for a mistrial after the trial had recessed for the day. The district court determined that the statement had merely been incidental to the agent's testimony and had quickly been glossed over, so that

its prejudicial effect was minimal. Moreover, the district court judge felt that delivery of a cautionary instruction would probably serve to emphasize a statement that the jury had largely ignored. These circumstances do not provide any evidence to suggest that the district court judge abused his discretion in not declaring a mistrial. *See United States v. Davis,* 663 F.2d 824, 833 (9th Cir.1981) (failure to object to exposure of defendant in manacles precludes reversal of court's denial of mistrial).

■ The other two pieces of evidence that McCown claims were erroneously admitted with respect to Count 17 pertained to an earlier meeting between undercover agents and McCown and Barnes, Jr. McCown claims that the cumulative effect of these three pieces of evidence was to give the jury the impression that he was "involved in all kinds of nefarious and illegal transactions with other people outside of the offense charged in Count 17." McCown's fears seem vastly exaggerated. The latter two pieces of evidence merely served to put the events of October 9 (the date of the actual cocaine transaction) in context. *See United States v. Masters,* 622 F.2d 83, 84–88 (4th Cir.1980) (evidence of other crime admissible where it furnishes part of context of crime). In view of the overwhelming evidence of that transaction, these pieces of evidence cannot be considered prejudicial.

■ Similarly, McCown's challenge to evidence of prior bad acts admitted during his trial on Counts 1, 14, 15, and 16 is unfounded. Either the evidence had little prejudicial effect or the district court mitigated any potential prejudice by giving limiting instructions. McCown challenges the district court's admission of several statements referring generally to McCown's experience with other illegal activities. We find that the district court did not abuse its discretion in ruling that these statements were merely part of a "sales pitch" by McCown and Barnes, Jr., to prove their

ability to follow through on their promises to the agents, and did not unduly prejudice McCown.

■ McCown further alleges that it was error to allow evidence of the events that comprised the charge of Count 17 in the trial of the remaining counts. However, the evidence seems probative of the conspiracy and the roles of the co-conspirators. *See United States v. Moreno-Nunez,* 595 F.2d 1186, 1188 (9th Cir.1979).

### B. Barnes, Sr.

■ Barnes, Sr., cites the admission of two pieces of evidence of prior bad acts as prejudicial. The first involved testimony by agent Candelaria mentioning that he saw Barnes, Sr., smoking a marijuana cigarette as the agent entered the room for a meeting with him. We first note that any possible prejudice due to this testimony was compounded by the action of Barnes' own counsel in questioning the agent in greater detail about the incident during cross-examination, thus drawing the jury's attention to it. However, we find that the prejudicial effect of all testimony concerning this incident was minimal. Agent Candelaria speculated that Barnes was smoking the marijuana as a means of "inspecting" the sample he had earlier received from the agents. There was other evidence that Barnes, Sr., was anxious to receive samples of the marijuana he would receive in the exchange, presumably for purposes of testing and inspection. In view of this evidence, the jurors would know that whatever method of inspection Barnes, Sr., employed involved illegal conduct.

■ The district court admonished the jury that evidence that Barnes, Sr., was smoking marijuana was not to be considered by them in determining his guilt or innocence of the charges before them. We find that this jury instruction was sufficient to dispel whatever prejudice the testimony may have caused. *See United States v. Sanford,* 673 F.2d 1070, 1072 (9th Cir.

1982); *United States v. Johnson,* 618 F.2d 60, 62 (9th Cir.1980).

■ The other evidence of a prior bad act came in when an agent mentioned, as an incidental part of an answer to a question, that Barnes, Sr., had told him that he had been arrested. The *prosecutor* objected at this point, and the jury never heard the charge on which Barnes, Sr., had been arrested. The judge found that the prejudice was minimal, but offered to give a curative instruction. Barnes, Sr., did not request such an instruction. Under these circumstances, we do not find that the trial judge abused his discretion in refusing to grant a mistrial. *See United States v. Feroni,* 655 F.2d 707, 712–13 (6th Cir.1981); *cf. United States v. Regner,* 677 F.2d 754, 757 (9th Cir.) (failure to give limiting instruction in absence of request by defendant not "plain error"), *cert. denied,* —— U.S. ——, 103 S.Ct. 220, 74 L.Ed.2d 175 (1982).

### C. Barnes, Jr.

■ Barnes, Jr., alleges error because the prosecutor, in his opening argument, mentioned that Barnes, Jr., was facing sentencing in another matter at the time of the alleged conspiracy. The prosecutor had planned to introduce evidence of the pending sentencing in order to show that Barnes, Jr., was under indictment while receiving firearms, since being under indictment was an element of the crimes charged in three of the counts against Barnes, Jr. The evidence was never presented because the parties entered a stipulation that Barnes, Jr., was under indictment. Barnes, Jr., rejected the district court judge's offer to give a cautionary instruction on the matter of the prosecutor's opening statement. We see no error here, but even if there was error, in light of the strong evidence against Barnes, Jr., the prosecutor's mentioning his sentencing does not rise to the level of error requiring reversal. *See United States v. Feroni,* 655 F.2d 707, 712–13 (6th Cir.1981); *United States v. Geise,* 597

F.2d 1170, 1199 (9th Cir.), *cert. denied,* 444 U.S. 979, 100 S.Ct. 480, 62 L.Ed.2d 405 (1979).

XI.  *Conclusion*

For the reasons discussed above, we affirm all convictions of each appellant.