106 F.3d 410
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Odis Buck GARRETT, Defendant-Appellant.
 No. 92-106212.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 11, 1996.
Decided Jan. 16, 1997.
As Amended on Denial of Rehearing and Suggestion for
Rehearing En Banc April 15, 1997.*
 
 Before: REINHARDT and RYMER, Circuit Judges, and TANNER, District Judge.*
 MEMORANDUM**
 Odis Buck Garrett appeals his convictions for conspiring to manufacture, distribute, and possess methamphetamine; possession of phenyl-2-propanone with intent to manufacture methamphetamine; possession of a three-neck round-bottom flask with intent to manufacture methamphetamine and phenyl-2-propanone; traveling interstate in aid of drug trafficking; and two counts of structuring.[1]
 I.
 Garrett asserts that the court erred with respect to certain jury instructions. First, he argues that the court erred in failing to instruct the jury that he had to know that P-2-P was a controlled substance. The trial court instructed the jury that in order to find Garrett guilty it had to find that he "knowingly possessed" methamphetamine and P-2-P. That was sufficient. The government is not required to prove that Garrett knew that methamphetamine and P-2-P are controlled substances. U.S. v. Marsh, 894 F.2d 1035, 1041 (9th Cir.1989), cert. denied, 493 U.S. 1083 (1990).[2]
 Second, Garrett argues that the district erred when it failed to give the "drug addict" and "perjurer" instructions he requested. While the court refused to give Garrett's requested instruction, it did give an adequate cautionary instruction as required by U.S. v. Ochoa-Sanchez, 676 F.2d 1283, 1289 (9th Cir.1982).
 Third, Garrett argues that the district court erred in failing to give a specific unanimity instruction in response to a note from the jury during deliberations. We reject his claim. Normally, in a routine criminal case, a general instruction on the requirement of unanimity suffices. When "there is a genuine possibility of jury confusion or that a conviction may occur as the result of different jurors concluding that the defendant committed different acts ... the trial judge must augment the general instruction to ensure the jury understands its duty to unanimously agree to a particular set of facts." U.S. v. Echeverry, 698 F.2d 375, as modified at 719 F.2d 974, 975 (9th Cir.1983). In this case however, when the jury asked its question, it appeared that at least some of the jurors might have been under a misimpression that was advantageous to Garrett, thinking, that in order to convict him on the conspiracy count they might have to find him guilty of all the component offenses instead of just one. The court properly reiterated its earlier conspiracy instruction. There was no cause to give an additional unanimity instruction.
 Finally, the government concedes that the district court erred in failing to properly instruct the jury on the elements of structuring. In accordance with Ratzlaf v. U.S., 114 S.Ct. 655 (1994), the jury was required to find that Garrett knew that structuring was illegal Thus, the convictions on the two structuring counts must be reversed and the sentences vacated.
 
 II.
 
 1
 Garrett makes several Fourth Amendment claims. First, he contends that the district court erred in failing to grant his request for a Franks hearing. To determine whether a defendant was entitled to a Franks hearing, we engage in a two-step inquiry. First, we consider whether the affiant intentionally falsified or omitted statements or acted with reckless disregard for the truth. United States v. Meling, 47 F.3d 1546, 1553 (9th Cir.), cert. denied, 116 S.Ct. 130 (1995) (citation omitted). Second, if the defendant makes a sufficient showing that the affidavit was falsified, we then ask whether the falsifications were material. Id. Because Garrett did not allege sufficient facts to satisfy the first part of the inquiry, his claim fails. We also reject Garrett's challenge, under Illinois v. Gates, 462 U.S. 213 (1983), to the affidavit's reliance on information from confidential informants. The affidavit establishes that information from these informants has been good in the past, and was reliable in this instance.
 
 
 2
 Garrett's claims of a violation of his Fourth Amendment rights as a result of various searches conducted by the government also fail. The warrantless search of the Yankee Jim Ranch did not amount to a Fourth Amendment violation in light of the open fields doctrine. There was no home located on the property. See Oliver v. United States, 466 U.S. 170, 180 (1984). Moreover, the evidence seized was trash, which having been left for disposal is unprotected by the Fourth Amendment. California v. Greenwood, 486 U.S. 35 (1988).
 
 
 3
 Garrett did not have standing to assert a Fourth Amendment claim for the search of his employee Karen Johnson's truck. Because Garrett had no possessory interest in the truck, he had no legitimate expectation of privacy. United States v. Broadhurst, 805 F.2d 849, 851-52 (9th Cir.1986).
 
 
 4
 Garrett's claim that the warrant the government obtained to search his business at 4531 Highway 51 in Ione, California did not include a detached garage also fails. In seeking the warrant, the government presented pictures of the property, including the detached garage, to the Magistrate. He then authorized the search. Moreover, we have previously held that an attached garage is within the scope of a warrant authorizing the search of a particular address. United States v. Frazin, 780 F.2d 1461, 1467 (9th Cir.) cert. denied, 479 U.S. 844 (1986). In Frazin, we also said that a collection of separate buildings at a listed address would be covered. Id.
 
 
 5
 Although Garrett also alleges that the search of the barn at 606 Mission Olive Drive residence was illegal, the evidence seized there was not entered at trial. For this reason, this claim must also fail.
 
 III.
 
 6
 Garrett alleges several sentencing errors. First, we hold that the district court did not err when it sentenced Garrett under the 1991 guidelines even though the offense was committed in 1989. Garrett asserts that he was subjected to ex post facto application of the sentencing guidelines as some of the precursor chemicals he used were not mentioned in the 1989 guidelines. This fact is irrelevant. Garrett was not sentenced for possession of the precursor chemicals but for conspiracy to manufacture, and actual manufacture of, methamphetamine. In order to determine that sentence, the court is permitted to consider the quantity of methamphetamine Garrett's laboratory could have produced, in addition to what it actually produced. U.S. v. Putney, 906 F.2d 477, 479 (9th Cir.1990).[3] In this connection, the court may consider the quantity of precursor chemicals involved, whether or not they are specifically referred to in the Guidelines.
 
 
 7
 Garrett contends that the district court erred by including the 61.5 kilograms of methamphetamine found during a subsequent search at the Yankee Jim Ranch pursuant to a warrant. The methamphetamine found during this search is immaterial, however, as subtracting the amount of methamphetamine found there from the total used to calculate Garrett's sentence does not change his offense level.
 
 
 8
 Garrett also argues that the district court erred in failing to determine the type of methamphetamine he manufactured when it sentenced him for D-Methamphetamine as opposed to L-Methamphetamine which carries a less harsh penalty. Testimony at trial revealed that Garrett's manufacturing method yielded DL-Methamphetamine--an equal combination of both types. See Sentencing Guidelines for the United States Courts, 60 Fed.Reg. 2430, 2456 (1995). At the very least the court may treat as D-Methamphetamine, the component that consists of that element. Even if the amount of methamphetamine for which Garrett was sentenced were halved, he would still be subject to the same sentence. Thus, any error was harmless.
 
 
 9
 Finally, with respect to sentencing, Garrett disputes the district court's finding that he had a "managerial role" in the conspiracy. The finding is supported by sufficient facts in the record and is therefore not clearly erroneous: Garrett leased the ranch where methamphetamine was produced, directed others to sign another lease using an alias, and used a straw buyer to purchase another ranch where methamphetamine was produced. There was also testimony that Garrett supervised the manufacture of methamphetamine and told others to purchase glassware, laboratory equipment, and precursor chemicals.
 
 IV.
 
 10
 Garrett argues that prosecutorial misconduct so plagued the trial that reversal is required. First, he argues that when cross-examining him, the prosecutor improperly exceeded the scope of the direct examination. Garrett provided extensive testimony on direct examination to establish that his funds were obtained through legitimate business transactions and prize monies from horse breeding contests. On cross, the prosecution asked why he did not mention the legality of his funds during asset forfeiture proceedings. Permissible cross examination includes anything "reasonably suggested" by the direct examination. United States v. Martinez, 967 F.2d 1343, 1347 (9th Cir.1992). (citation omitted). Thus, we do not find that the prosecution acted improperly.
 
 
 11
 During closing argument, the prosecution mentioned that one of its key witnesses was in the federal witness protection program. Garrett moved for a mistrial on the grounds that the prosecution failed to furnish the defense with that information in violation of Brady v. Maryland, 373 U.S. 83 (1963). However, the information had been revealed to a defense investigator during a discussion between the investigator and the prosecutor. Thus the prosecution reasonably believed that the evidence had been disclosed to defense counsel. Moreover, even if the prosecution had not revealed the information to the defense prior to closing argument, the information does not satisfy the materiality requirement outlined in Brady. See U.S. v. Bagley, 473 U.S. 667, 682 (1985).
 
 
 12
 Garrett also maintains that two of the prosecutor's comments during closing argument constituted improper vouching. The first statement is as follows:
 
 
 13
 Mr. Havens pled guilty. He is awaiting sentencing in this court. His agreement with the United States Attorney's Office is that if he were to tell the truth on the stand, that would be brought to the attention of the sentencing judge. And we will bring that to the attention of the sentencing judge.
 
 
 14
 Garrett is correct that this statement constitutes vouching, but because he failed to object it is subject to plain error analysis. We hold that it does not constitute plain error. The second statement was that a key prosecution witness:
 
 
 15
 admitted he lied at the Grand Jury to protect Russell Guinn, to protect Mr. Wilson, and when he admitted on the stand that he had for the first time in this courtroom admitted that the weekend before he went to prison turning himself in his case, he actually manufactured methamphetamine, he knew, and he testified to this, that he may have blown his whole deal.
 
 
 16
 This statement, whatever it is, does not constitute vouching. Thus, this claim fails also.
 
 
 17
 Finally, Garrett argues that the prosecution behaved improperly when it claimed during closing argument that Garrett was "spinning some testimony." Garrett did not object to this statement below. Even if he had, we would reject the claim. It is not improper for the prosecutor to "voice doubt about the veracity of a defendant who has taken the stand," United States v. Birges, 723 F.2d 666, 672 (9th Cir.), cert. denied, 466 U.S. 943 (1984).
 
 V.
 
 18
 We reject Garrett's claim that the district judge was required to recuse himself. Garrett failed to provide evidence that the district court was in any way prejudiced against him. Moreover, in his brief before this court he failed to provide citations in the record to the most consequential remarks allegedly made by the court. See Fed.R.App.P. 28.
 
 VI.
 
 19
 The district court did not abuse its discretion in failing to appoint a "smell expert" for Garrett at his suppression hearing to testify that the odor of P-2-P could not be detected at a distance of 60 yards with the wind blowing. A court must appoint an expert if that expert is necessary to an adequate defense. Garrett failed to show prejudice from the failure to appoint the expert. U.S. v. Labansat, 94 F.3d 527, 530 (9th Cir.1996).
 
 VII.
 
 20
 Garrett also contends that the district court erred in refusing to grant a mistrial when the prosecutor mentioned that a codefendant had been convicted and sentenced to fifteen years. The information was solicited by one of Garrett's codefendants. There was no error, as the court gave a cautionary instruction to the jury. United States v. McCown, 711 F.2d 1441, 1451 (9th Cir.1983).
 
 VII.
 
 21
 We reject Garrett's claim that the Speedy Trial Act was violated. Garrett and his codefendants filed numerous motions and asked for several continuances. The district court's findings of complexity and calendaring of subsequent court dates was consistent with the Speedy Trial Act, as was its determination of excludable time. Garrett's argument that his counsel could not waive his speedy trial right on his behalf is misplaced, as there was nothing to waive.
 
 VIII.
 
 22
 Garrett argues finally that the Drug Enforcement Agency's (DEA) policy of destroying certain evidence is a bad faith policy. However, he fails to show bad faith as required by Arizona v. Youngblood, 488 U.S. 51, 58 (1988). The DEA's policy authorizes destruction of hazardous materials for safety reasons and is not in bad faith.
 
 Conclusion
 
 23
 We reverse as to the two structuring counts and affirm in all other respects.
 
 
 24
 AFFIRMED in part, REVERSED and VACATED in part.
 
 
 
 *
 Judges Reinhardt and Rymer have voted to reject the suggestion for rehearing en banc and Judge Tanner so recommends
 
 
 *
 The Honorable Jack E. Tanner, Senior United States District Judge for the Western District of Washington, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Garrett's motion to strike the government's brief is denied
 
 
 [2]
 In a similar vein, Garrett argues that there was insufficient evidence for the jury to find that P-2-P was a controlled substance. Because a finding that P-2-P is a controlled substance is not an element of the offense, Garrett's claim is without merit. We also reject Garrett's argument that there was no proof that 'P-2-P' was phenyl-2-propanone, as both are merely trade names for the same listed chemical, phenylacetone. 21 C.F.R. § 1302.12(g)
 
 
 [3]
 Because Garrett was properly sentenced based upon the amount of the drug contemplated in the conspiracy, he was not sentenced for acquitted conduct