141 F.3d 1182
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
United States of America, Plaintiff-Appellee,
v.
Harley REYNOLDS, Defendant-Appellant.
 No. 97-10025.
D C CR-96-00017-ECR.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Jan. 13, 1998.
Decided Feb. 11, 1998.
 
 Appeal from the United States District Court for the District of Nevada Edward C. Reed, Jr., District Judge, Presiding.
 Before CHOY, SCHROEDER and WIGGINS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Harley Reynolds ("Reynolds") appeals his conviction after a jury trial of nine counts of making false official statements in violation of 18 U.S.C. § 1001. Reynolds contends the district court erred in denying his Fed.R.Crim.P. 29(c) motion for a judgment of acquittal because: (1) there was insufficient evidence to establish Reynolds violated § 1001 by submitting false work time records to his employer, the U.S. Soil Conservation Service ("SCS"), "on or about" the dates alleged in the indictment; (2) there was insufficient evidence to establish that the time cards were material; (3) counts 4 and 5 were multiplicious; and (4) venue did not lie in the District of Nevada. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.
 
 DISCUSSION
 
 3
 I. "On or About"
 
 
 4
 Reynolds contends there was insufficient evidence to establish that he violated § 1001 on the dates alleged in the indictment because there was no proof beyond a reasonable doubt that he made the false statements "on or about" the dates alleged in the indictment. We disagree.
 
 
 5
 Reynolds' reliance on United States v. McCown, 711 F.2d 1441, 1450 (9th Cir.1983) ("on or about" means no more than one or two days from the date alleged in the indictment), is misplaced because the issue in that case was whether an indictment alleging that a conspiracy was in operation beginning and ending "on or about" certain dates was sufficiently specific. This court clarified the meaning of the term "on or about" "to prevent any dickering over the small technicality of an exact date." Id. This case is more similar to United States v. Laykin, 886 F.2d 1534 (9th Cir.1989), regarding when the variance between proof and indictment constitutes reversible error. See id. at 1543 ("because the statute does not make time a material element, the variance between proof and indictment is irrelevant so long as the defendant[] [was] afforded adequate notice of the charges against [him]"). See also Fed.R.Crim.P. 52(a) ("any ... variance which does not affect substantial rights shall be disregarded"). The "true inquiry ... is not whether there has been variance of proof, but whether there has been such variance as to affect substantial rights of the accused." United States v. Tsinhnahijinnie, 112 F.3d 988, 991 (9th Cir.1997) (quoting Berger v. United States, 295 U.S. 78, 82, 55 S.Ct. 629, 79 L.Ed. 1314 (1935)).
 
 
 6
 The variance in this case did not affect Reynolds' substantial rights. There is no question that Reynolds had adequate notice of the events charged against him, and his ability to defend himself at trial was not hindered by the discrepancy in dates. As the district court explained, "That the evidence of when Defendant 'made' his time sheets (relative to when the National Finance Center, or any other party, received them) is inconsistent and confusing does not change the fact that Defendant submitted them in order to get paid."
 
 II. Materiality
 
 7
 Reynolds claims his false statements were not material because they had no "natural tendency to influence, or [be] capable of influencing, the decision of the decisionmaking body to which it was addressed." United States v. Gaudin, 515 U.S. 506, 509, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995) (quoting Kungys v. United States, 485 U.S. 759, 770, 108 S.Ct. 1537, 99 L.Ed.2d 839 (1988) (internal quotation marks omitted)). Reynolds contends there was insufficient evidence that the government agency relied upon the time cards to make decisions regarding his wages because the testimony at trial showed that paychecks were issued on a particular schedule regardless of when the employee's time cards were received by the central office in Reno or the National Finance Center in New Orleans.
 
 
 8
 The test for determining materiality of a false statement is whether the falsification is calculated to induce action or reliance by the government agency: Could it affect or influence the exercise of government functions, and does it have a natural tendency to influence or is it capable of influencing agency action? United States v. Carrier, 654 F.2d 559, 561 (9th Cir.1981); United States v. Valdez, 594 F.2d 725, 729 (9th Cir.1979) ("We think the test is the intrinsic capabilities of the false statement itself, rather than the possibility of the actual attainment of its end as measured by collateral circumstances.") (quoting United States v. Quirk, 167 F.Supp. 462, 464 (E.D.Pa.1958), aff'd 266 F.2d 26 (3d Cir.1959)). Proof of actual reliance is not required; the government merely must prove that the statement is capable of influencing agency decision. United States v. Facchini, 832 F.2d 1159, 1162 (9th Cir.1987); Valdez at 729.
 
 
 9
 Because proof of actual reliance is not required, the statements are material regardless of the fact that checks sometimes were cut before the NFC received the time records. The fact remains that the agency "could have" relied upon the information. In fact, it did rely on the information to calculate "comp", sick, and vacation time, regardless of specific pay periods. Additionally, the hard copies of the time cards and computer printouts were maintained in Reno for 10 years. This indicates that they were or could have been relied upon during that time by supervisors at the state central office in Reno for a variety of reasons within the jurisdiction of the federal agency.
 
 
 10
 More importantly, Reynolds' immediate supervisors are a part of the decisionmaking chain of command. The time cards were relied upon for their accuracy by Reynolds' local supervisors, and the decision whether to pay Reynolds rested with them. The ultimate destination of the time records in New Orleans was for the ministerial function of printing the paychecks. That Reynolds' supervisors in Elko and Reno employed a sort of "honor system" with respect to time records does not mean they relinquished decisionmaking capacity, and it actually makes Reynolds' crimes more offensive to one's moral sensibilities.
 
 III. Multiplicious Counts
 
 11
 Reynolds argues that the charges for statements made on January 10th and 19th, 1995, were multiplicious. He maintains that "[s]ince the time submitted for Counts 4 and 5 was memorialized on the same sheet, only one statement was made as to both counts." This argument lacks merit. Reynolds submitted the time cards in order to be paid for the dates specified. This amounts to a separate statement for each day, not for each time card consisting of 14 days. The time entries are not analogous to a chain of actions leading to an ultimate event; rather, each time card contained a series of distinct statements, some of which were false. See United States v.. Molinaro, 11 F.3d 853, 860 (9th Cir.1993).
 
 IV. Lack of Venue
 
 12
 Reynolds contends venue does not lie in the State of Nevada because the offense of making false statements could not have been committed until the time cards reached their ultimate destination in Louisiana. This argument, too, lacks merit. Viewing the evidence in a light most favorable to the government, a rational trier of fact reasonably could have found that the decision whether to pay Reynolds for a particular period rested with his supervisor in Elko, Nevada, in his capacity as gatekeeper for the central office in Reno and the NFC. Moreover, the process of submitting the false time cards began in Nevada. Thus, venue was proper in the State of Nevada.
 
 CONCLUSION
 
 13
 For the foregoing reasons, we affirm the district court's denial of Reynolds' motion for acquittal.
 
 
 14
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3