UNITED STATES of America,
Plaintiff-Appellee,

v.

Jasper WYCOFF, Jr.,
Defendant-Appellant.

No. 76–2111.

United States Court of Appeals,
Ninth Circuit.

Nov. 15, 1976.

As Amended Jan. 10, 1977.

Certiorari Denied Feb. 22, 1977.

See 97 S.Ct. 1135.

Michael J. Brennan, Asst. Federal Public Defender, Los Angeles, Cal., for defendant-appellant.

George King, Asst. U. S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before DUNIWAY and ANDERSON, Circuit Judges, and SCHWARZER,* District Judge.

J. BLAINE ANDERSON, Circuit Judge:

Wycoff appeals his conviction by a jury for having violated 18 U.S.C. § 113(c), an assault with a dangerous weapon within the Special Maritime and Territorial Jurisdiction of the United States. We affirm.

### FACTS

A summary of the joint statement of facts filed for purposes of this appeal discloses that on August 7, 1975, Albert Ellis was sitting at a coffee table in the patio area of the Wadsworth Veterans Administration Hospital. Seated at the table with Ellis were two other individuals, Benny Reed and Louis Thomas. While seated, Ellis was struck on the back of the head by a blow variously described as a popping sound or a thud. No one saw this blow as it was struck. When the three men looked in the direction of the sound, they observed the appellant Wycoff standing some distance behind Ellis with an object in his hand. This object was described by Ellis as a iron pipe. Reed and Thomas described the object as a wooden stick. Upon observing Wycoff, Ellis said something to the effect "What the hell is that for?" Ellis testified that Wycoff responded "You know what that is for." Thomas corroborated this response and Reed testified that words were spoken, but he could not recall what the words were.

At trial, Andrew Evans, an investigator from the VA Hospital, was called to testify as to the arrest of Wycoff. Evans testified that he advised Wycoff of his rights and stated that Wycoff refused to sign a Waiver of Rights and that he would rather talk to an attorney. Upon conclusion of Evans' direct testimony, the trial court admonished the jury to completely disregard the testimony. A full transcript of the proceedings is set out in the margin.[1]

During discussions with counsel, the trial court indicated that he would instruct on three essential elements of the crime

---

* The Honorable William W. Schwarzer, United States District Judge for the Northern District of California, sitting by designation.

1. "BY MR. KING:
Q. When you apprehended Mr. Wycoff, did you advise him of his Constitutional rights?
A. Yes, I did.
Q. Did you read to him certain rights?
A. Yes, I did.
 * * * * * *
Q. What were those rights—did you read those rights from the form that you have to Mr. Wycoff?
A. Yes, I did.
Q. And what did you tell him?
THE COURT: Have you got the form with you?
THE WITNESS: I have a copy of the—the original copy.
 * * * * * *
THE COURT: What did you do when you apprehended him?

THE WITNESS: I immediately handcuffed him and transported him to police headquarters.
THE COURT: And then?
THE WITNESS: I advised him of his rights.
BY MR. KING:
Q. What did you do in that connection?
A. Do you want me to read it?
THE COURT: Yes, exactly what you said and what he said and what was signed, if anything, and who signed it. Let's get into it.
[Whereupon, the witness read the Miranda card and the Waiver of Rights form]
 * * * * * *
THE COURT: What else was done?
THE WITNESS: Mr. Wycoff refused to sign. He said he would rather talk to an attorney.
BY MR. KING:
Q. Did you ask—
A. He indicated he understood what his rights were.
Q. Did you ever ask him any questions?
A. No, I did not ask him any questions.
MR. KING: I have no further questions of this witness, your Honor.

charged. Defense counsel requested that the trial court instruct the jury as to a fourth element, i. e., that the assault was without just cause or excuse. The trial court ruled that just cause or excuse was not an essential element that must be proved affirmatively by the government. After closing arguments and during the court's instruction to the jury, the court, *sua sponte,* reversed itself and added the aforementioned fourth essential element to the essential elements instruction. No notice of this addition was given to counsel prior to the actual instructions being read to the jury.

Appellant urges three errors in this appeal: (1) the failure of the trial court to grant his mistrial motion following Agent Evans' testimony regarding appellant's post-arrest assertion of his right to remain silent and his right to counsel; (2) the trial court's changing of instructions without prior notice; and (3) the sufficiency of the evidence.

## POST–ARREST SILENCE

The alleged error occurred in the government's case-in-chief during the direct examination of Agent Evans. After testifying that he had advised appellant of his rights and had explained the waiver of rights form to the appellant, Agent Evans stated, "Mr. Wycoff refused to sign. He said he would rather talk to an attorney." (R.T. 77. After receiving this response, Agent Evans did not ask any questions of appellant. The purpose for putting on such testimony, as acknowledged by government counsel, was "Just to show, your Honor, that his rights were read to him." (R.T. 77.

\* \* \* \* \* \*

THE COURT: I do not know why you put this in if you did not ask him any questions?

MR. KING: Just to show, your Honor, that his rights were read to him.

THE COURT: Well, that is nonsense. The only reason you show any rights are read is to make admissible an admission or confession.

MR. MOSCOVITCH: That was the nature of my objection, your Honor.

THE COURT: Well, you did not say it, so how did I know?

What is the point of it?

Upon realizing that there were no statements taken after the warnings that were going to be introduced into evidence, the trial judge admonished the jury to disregard the testimony. (R.T. 78).

The only relevant purpose for showing that appellant was advised of his rights is to lay a proper foundation for the admission of any statements given thereafter by an accused. In the present case there were absolutely no statements given to Agent Evans by Wycoff. By eliciting such testimony, the government put before the jury the fact that appellant remained silent and requested an attorney. The natural tendency of the use of the testimony in this manner is to prejudice the defendant by attempting to create an inference of guilt in the jury's mind.

It has long been held that an accused shall not be penalized by the assertion of a constitutional right. In *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, (1966), the court stated:

"In accord with our decision today, it is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation. The prosecution may not, therefore, use at trial the fact that he stood mute or claimed his privilege in the face of accusation." 384 U.S. at 468, n. 37, 86 S.Ct. at 1625.

*See also, Grunewald v. United States,* 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957), (concurring opinion of Justice Black, 353 U.S. 425); *Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965).

In *Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971), and *Oregon*

Is there a motion to strike?

MR. MOSCOVITCH: Motion to strike, your Honor.

THE COURT: Granted.

\* \* \* \* \* \*

THE COURT: Exhibit 6. Motion to strike granted.

It will not be before the jury. The jury is instructed to disregard it.

I do not understand it. I do not understand it why you are offering such a thing unless you want to follow through on it and you do not."

*v. Hass,* 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975), the court allowed post-arrest statements that were inadmissible because of failure to adhere to *Miranda* to be used for impeachment purposes when the statements taken were inconsistent with testimony at trial. The Supreme Court was concerned that an accused would use the *Miranda* protections as a shield against contradiction of his own inconsistent statements.

More recently, in *United States v. Hale,* 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975), and *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), the court held that an accused's failure to give an exculpatory story to the arresting officer may not be used to impeach an explanation offered at trial. The court focused on the insoluble ambiguity of silence.

In the present case, there were no statements given by appellant to Agent Evans and the testimony elicited could in no way be used for impeachment purposes. This line of questioning stressing the appellant's assertion of his constitutional rights only "cuts down on the privilege by making its assertion costly." *Griffin, supra,* 380 U.S. at 614, 85 S.Ct. at 1233.

■ However, we view the error here as harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The evidence against the appellant was overwhelming. Additionally, immediately after the occurrence in question (R.T. 78) and in its final charge (R.T. 246–247), the trial judge admonished the jury to completely disregard the testimony received from Agent Evans. The instructions to disregard were prompt and forceful. *United States v. Altavilla,* 419 F.2d 815 (9th Cir. 1969).

■ This panel is concerned and alarmed about the increasing attempts by government counsel in this Circuit to make reference to or elicit testimony regarding an accused's silence at the time of arrest. Government counsel are on the verge of the precipice and jeopardizing solid cases by such practice. The often-repeated words of Mr. Justice Sutherland, in *Berger v. United States,* 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935), again bear repeating:

> "The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one." 295 U.S. at 88, 55 S.Ct. at 633.

In future cases government counsel must scrupulously avoid all reference to or use of an accused's assertion of his right to remain silent or his right to counsel to except where permitted by established rules of law. The conduct here, though we cannot know that it was maliciously deliberate, was reprehensible nevertheless.[2 & 3]

## CHANGE IN JURY INSTRUCTIONS

Rule 30 of the Federal Rules of Criminal Procedure states in pertinent part:

---

**2.** The Prosecution Function, and the Defense Function, American Bar Association, Standards Relating to the Administration of Criminal Justice (1971), Section 5.6(b), p. 119 (also see Commentary, pp. 120–121) states:

> "It is unprofessional conduct for a prosecutor knowingly and for the purpose of bringing inadmissible matter to the attention of the judge or jury to offer inadmissible evidence, ask legally objectionable questions, or make other impermissible comments or arguments in the presence of the judge or jury."

**3.** Evenhandedness requires us also to fault defense counsel in his briefing of this case for appellate review. This, too, it seems to members of this panel, is an area of rather frequent violation. In his brief, appellant's counsel quotes a portion of the trial judge's final in-

"The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury . . ." In the instant case, the trial judge indicated to counsel that he would only instruct as to three essential elements. After closing arguments and during the actual instructing of the jury, the trial judge instructed as to four essential elements of the crime charged. Thus, appellant was not informed prior to closing argument that the trial judge would instruct as to four essential elements as requested by appellant.

 The proper focus of our inquiry is on the effect which the court's misleading indications regarding the requested instructions had on the closing argument of counsel. *United States v. Harvill*, 501 F.2d 295 (9th Cir. 1974). The trial judge changed his initial ruling on the basis that since the allegations of the indictment stated that

the assault was without justification or excuse, then the burden was on the government to prove those allegations. Mr. Ellis testified that he had no discussions with nor did he make any gestures toward the appellant on the day in question. This testimony sufficiently established a prima facie case that the assault was without justification or excuse. The appellant came forth with no evidence nor made an offer of proof of any such evidence that would show justification or excuse. Therefore, at the time of closing argument appellant had no evidence from which to argue that the assault was justified or excusable. We conclude that the misleading indication of the trial court had no prejudicial effect on the content of appellant's closing argument and the error, if any, was harmless beyond a reasonable doubt. 28 U.S.C. § 2111, Fed.R. Crim.Proc. 52(a).

structions to the jury (Appellant's Brief, p. 24; R.T. pp. 241–2). He then argues that the instruction was vague and "made no specific reference to the testimony of Agent Evans and made no reference to the defendant's Fifth and Sixth Amendment rights." It becomes perfectly clear that the quoted portion of the instructions cited by appellant does not refer to the question at hand, when, four pages later in the reporter's transcript, the following instruction is found:

"Now, in that connection, I want to warn you again, instruct you as vigorously as I can, that the attempt to introduce the alleged warning as to the rights allegedly given to the defendant at the time he was arrested, before or shortly after he was arrested, is not before you and should not be before you, should never have been before you and you must disregard it absolutely and completely.

"Can each and every one of you do that? I must be satisfied of this or we go no further. You have to disregard that completely.

"It was a mistake ever to have been brought up and I think I made that pretty clear, but I want to make it clear again, it has nothing to do with the case here. You may not consider it at all in considering the guilt or innocence of the defendant as to the charges made here alleged against him."

The vice of appellant's presentation to this court lies in omission.

"He (appellate counsel) must not mislead the court by misrepresenting the record or by ignoring matters of record which are adverse to his contentions."

A.B.A. Standards Relating to the Prosecution and Defense Function (1971), Sec. 8.4, Commentary, p. 303.

Additionally, nowhere in appellant's brief is any reference made to the immediate and forceful instruction given to the jury and the admonition given to government counsel when it became apparent to the trial judge that no foundation was being laid to present evidence of inculpatory statements. R.T. 78, quoted at length in footnote # 1, supra.

At least three of the Standards Relating to the Defense Function, supra, bear upon this situation. Standard 1.1(d) (and see Commentary, p. 175) states:

"1.1.(d) It is unprofessional conduct for a lawyer intentionally to misrepresent matters of fact or law to the court."

and Standard 8.4(b) (and see Commentary, p. 303) provides:

"8.4(b) Appellate counsel should be scrupulously accurate in referring to the record and the authorities upon which he relies in his presentation to the court and on his oral argument."

Of overall importance is the requirement of Standard 1.1(e) (and see Commentary, pp. 175–176) admonishing that:

"[I]t is the duty of every lawyer to know the standards of professional conduct as defined in codes and canons of the legal profession . . ."

We, society and the system of judicial administration that the legal profession is oath bound to uphold, require that no artifice be utilized to mislead or improperly influence the judiciary.

## SUFFICIENCY OF THE EVIDENCE

 The proper focus of our inquiry is whether the evidence, considered in the light most favorable to the government, was such as to permit a rational conclusion by the jury that the accused was guilty beyond a reasonable doubt. *United States v. Nelson,* 419 F.2d 1237, 1242 (9th Cir. 1969). Our review of the record indicates that the evidence was sufficient, if not overwhelming, to permit the jury to reasonably conclude that the appellant was the perpetrator of the assault upon Mr. Ellis.

AFFIRMED.