UNITED STATES of America,
Plaintiff-Appellee,

v.

Lorenzo Lawrence Jose DE LA LUZ GALLEGOS, Defendant-Appellant.

No. 83–1423.

United States Court of Appeals,
Tenth Circuit.

July 2, 1984.

Charles Dickinson Burg, Denver, Colo., for defendant-appellant.

Presiliano Torrez, Asst. U.S. Atty., Albuquerque, N.M. (William L. Lutz, U.S. Atty. and Stanley K. Kotovsky, Jr., Asst. U.S. Atty., Albuquerque, N.M., on brief), for plaintiff-appellee.

* Honorable H. Dale Cook, Chief United States District Judge for the Northern District of Oklahoma, sitting by designation.

Before McWILLIAMS and LOGAN, Circuit Judges, and COOK*, District Judge.

H. DALE COOK, District Judge.

Defendant Lorenzo Lawrence Jose De La Luz Gallegos was convicted after trial to a jury of possession of an unregistered firearm, in violation of 26 U.S.C. § 5861(d) and possession of a firearm bearing no serial number, in violation of 26 U.S.C. § 5861(i). Defendant was sentenced as a youthful offender pursuant to the provisions of 18 U.S.C. § 5010(b) on March 18, 1983. The assertions raised by the defendant on appeal are that (1) the trial court erred in denying defendant's motion to suppress statements made to a government agent, and (2) the trial court erred in denying defendant's motion for a mistrial based upon defendant's assertion that trial counsel for the government presented during opening statement information which penalized the defendant for invocation of his Sixth Amendment right to counsel. We affirm the convictions.

The evidence at trial showed the following: On July 5, 1982, the defendant and his brother were observed near a gas well on the Jicarilla-Apache Indian Reservation by a tribal police officer. The officer detained defendant and his brother on suspicion of stealing drip gas. At some point after the detention defendant and his brother ran from the officer, got into a red or maroon pickup truck and drove away. The officer fired a shot from his weapon in the air and pursued the vehicle. Some time during the chase the officer saw a flash from the passenger side of the vehicle and he heard the report of a gunshot. The officer called for assistance. The defendant and his brother were captured by authorities at a roadblock about two and one-half hours later. The red or maroon pickup was searched and a shotgun, which ultimately led to the instant charges, was found in the pickup truck. Shotgun shells, including

one spent shell, were also recovered from the truck.

On the next day, the defendant was approached by an agent of the Bureau of Indian Affairs for the purpose of an interview. In that the defendant spoke only limited English, a Tribal Judge for the Jicarilla-Apache Tribe was contacted to act as an interpreter/translater for the interview. Defendant was versed in the Spanish language. Present at the time were defendant, the BIA agent, the Tribal Judge and defendant's mother. The Tribal Judge translated the *Miranda*[1] rights from English into Spanish. The defendant indicated that he understood his rights and made a request for an attorney. The Tribal Judge then conversed with defendant's mother about health problems of the defendant. This occurred after the reading of the *Miranda* rights to the defendant. At this meeting the defendant made some statements that tended to show that he was in possession of the shotgun involved herein prior to arrest at the roadblock and tended to negate his defense that he was not aware that the shotgun was in the red or maroon pickup truck at the time of his arrest.

The trial court, after a motion to suppress hearing, found that the statements made by the defendant at the aforementioned meeting were volunteered by the defendant and not the result of any questioning by the BIA agent or any other government official. The only statement that the trial court found was a result of questioning was deemed inadmissible. This concerned a question by the BIA agent to defendant as to whether he had seen or knew the tribal police officer who made the initial stop on the reservation near the gas well.

In essence the trial court found that the incriminating statements made by defendant, whether made before or after his request for an attorney, were not the result of any governmental interrogation or its functional equivalent. *See Rhode Island v. Innis,* 446 U.S. 291, 100 S.Ct. 1682, 64

L.Ed.2d 297 (1980); *United States v. Carpenter,* 611 F.2d 113 (5th Cir.1980), *cert. denied,* 447 U.S. 922, 100 S.Ct. 3013, 65 L.Ed.2d 1114 (1980); *United States v. Guido,* 704 F.2d 675 (2nd Cir.1983).

In this case, the defendant appears to argue both that the actual advisement of *Miranda* rights, themselves, and the conversation between the Tribal Judge and defendant's mother, after he had invoked his right to counsel, were the functional equivalent of interrogation.

The starting point for our inquiry begins with *Miranda v. Arizona, supra.* There, the United States Supreme Court held that law enforcement officers must give certain warnings to defendants before being allowed to interrogate them in a custodial setting. Here there is no doubt that the defendant was in custody within the meaning of *Miranda.* The problem arises in the present situation, except as to the one statement held inadmissible by the trial court, as to whether or not the incriminating statements made by defendant were the result of any law enforcement interrogation. They were not and the trial court was warranted in so finding.

Here, the BIA agent and the Tribal Judge were involved with a defendant whose knowledge of English was limited. During the *Miranda* warnings the defendant began to interject comments. In that the defendant made a request for an attorney no questioning of him followed. At one point, while defendant was volunteering statements, the BIA agent reminded him that because he had requested an attorney he should not say anything, but the defendant disregarded this advice and continued to interject comments during the conversation between the Tribal Judge and his mother about his health.

There were no accusatory statements or questions posed by law enforcement officials. Only spontaneous, unprovoked statements were involved. The admission of these statements does not violate the principles enunciated in *Miranda* because no

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

interrogation was involved. Though the defendant's version of the meeting differs with that of the BIA agent and the Tribal Judge, the trial court rejected defendant's version that questions were asked of him or that government officials engaged in any subtle form of interrogation. There is no indication that the law enforcement officials made any statements in the presence of defendant that they should have known were likely to elicit an incriminating response. *Innis, supra* 446 U.S. at 302–303, 100 S.Ct. at 1690–1691. In the context of the meeting at hand, the BIA agent had no reason to believe that advising defendant of his *Miranda* rights would elicit an incriminating response or that defendant would ignore the warning of the agent not to say anything after he had requested an attorney. The interrogation element of *Miranda* is simply not present here as the trial court so found. The statements made were volunteered, unprovoked and spontaneous. They were not foreseeable by the BIA agent, nor were they the product of any subtle form of interrogation.

▪ Furthermore, no violation of defendant's Fifth Amendment right to remain silent or, ancillary thereto, his Sixth Amendment right to counsel occurred here. Once a criminal suspect has asserted his right to counsel, all interrogation must cease until an attorney has been furnished to consult with him. *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), *reh. denied* 452 U.S. 973, 101 S.Ct. 3128, 69 L.Ed.2d 984 (1981). *Edwards,* however, does not prohibit the introduction of every statement made by a defendant after invocation of the right to counsel and before an attorney is afforded. The holding in *Edwards* simply prohibits the introduction of statements made by a defendant after invocation of his right to counsel which are in response to law enforcement initiated interrogation or its functional equivalent. As can be seen from the previous discussion no such interrogation was involved here. Simply because a suspect has requested an attorney is not itself sufficient to prohibit the use of spontaneous declarations not brought about by the

prompting of law enforcement officials. The BIA agent here scrupulously honored defendant's request for an attorney. He reminded defendant of his request and advised that no comments should be made. The defendant ignored this advice and there is no valid reason on this record to overturn the ruling of the trial court.

The defendant's reliance on *Edwards, supra,* and *Oregon v. Bradshaw,* 462 U.S. 1039, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983) is misplaced. There was no reinterrogation after defendant had once requested counsel here or any interrogation at all as we have previously pointed out. The question whether defendant knowingly and intelligently waived his right to counsel is, thus, not involved here. As it was said in *Edwards,* "[a]bsent such interrogation, there would have been no infringement of the right that Edwards invoked and there would be no occasion to determine whether there had been a valid waiver." *Id.* 452 U.S. at 485, 101 S.Ct. at 1885, relying on *Rhode Island v. Innis, supra,* 446 U.S. at 298, n. 2, 100 S.Ct. at 1688, n. 2.

Defendant's second assignment of error is that the trial court erred in denying his motion for a mistrial. The motion was based on statements made by trial counsel for the government during his opening statement to the effect that during the meeting discussed above the defendant requested an attorney. The defendant contends that these comments by the prosecutor penalized him for invoking his Sixth Amendment right to counsel. We disagree.

▪ A relevant purpose for admitting testimony that a defendant was advised of his rights under *Miranda* is to lay a proper foundation for the admission of any statements made by a defendant thereafter. *United States v. Wycoff,* 545 F.2d 679 (9th Cir.1976), *cert. denied,* 429 U.S. 1105, 97 S.Ct. 1135, 51 L.Ed.2d 556 (1977). This is so because it is the jury which must ultimately make the determination as to whether or not any subsequent statements made by a defendant were voluntary and

what weight to give to such statements in their deliberations. *United States v. Two Bulls*, 577 F.2d 63 (8th Cir.1978), *cert. denied* 439 U.S. 931, 99 S.Ct. 322, 58 L.Ed.2d 326 (1978).

The trial court in this case instructed the jury that it should determine if any statements made by defendant were knowingly and voluntarily made by him and that the jury should give any statement such weight as it believed it deserved under all of the circumstances. [Tr.Vol.III, pp. 130–131].

 It is well established that in a situation where a defendant makes no statement to law enforcement officials after the giving of the *Miranda* rights, evidence that a defendant has invoked his right to remain silent or requested an attorney is not admissible evidence at trial. *See Wycoff, supra* at 681–682; *United States v. King*, 485 F.2d 353, 360 (10th Cir.1973); *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976); *United States v. Two Bulls, supra* at 66. The reason for this is that a defendant should not be penalized for exercising his constitutional rights and a jury should not be allowed to draw an inference of guilt from such exercise. However, in certain atypical situations such evidence is properly admissible. *Two Bulls* at 66.

Here the government argues that the comments made during opening statement by the prosecuting attorney were to demonstrate the circumstances in which defendant made the incriminating statements in the presence of the BIA agent. It contends the comments were made to lay a foundation to demonstrate the voluntariness of these statements. No objection was made to the prosecutor's comment during opening statement. [Tr.Vol.III, pp. 13–14]. The issue was first brought up by the trial court outside the presence of the jury. [Tr.Vol.III, pp. 55–56]. No testimony concerning post-arrest silence or a request for

an attorney was brought up before the jury again until the defendant responded to a question asked by the prosecuting attorney concerning what he had said to the BIA agent and the Tribal Judge.[2] The defendant responded to the prosecutor's question that he had said he wanted an attorney. [Tr.Vol.III, pp. 104].

This case is similar to *Two Bulls, supra.* In that case the defendant, Ronald Steven Two Bulls, was convicted of fourth degree burglary in violation of the Indian Crimes Act of 1976, 18 U.S.C. § 1153. An investigator with the BIA, two FBI agents and two other BIA investigators went to Two Bulls' residence to investigate the burglary. Two Bulls was advised of his *Miranda* rights by the FBI agents. Two Bulls refused to make any statement and the FBI agents left. The BIA investigators remained and engaged in small talk. About twenty minutes later Two Bulls volunteered an incriminating statement about his involvement in the burglary.

At trial, prior to introduction of the incriminating statement, an FBI agent testified that *Miranda* warnings had been given to Two Bulls and that he declined to make any statement. The trial court denied Two Bulls' objection to the admission of this testimony and subsequently denied a mistrial motion. In *Two Bulls*, as here, the defendant made a pretrial motion to keep the inculpatory statement(s) out of evidence as being involuntary. The Eighth Circuit in *Two Bulls* stated:

> Under 18 U.S.C. § 3501(a) (1976), after the judge determines that an admission was made voluntarily, the jury may hear evidence on the question of voluntariness to enable it to determine what weight should be given the admission. Thus, the issue of voluntariness continued throughout the trial. Because the knowing exercise of the privilege to remain silent may refute an inference that a later statement was involuntary, the trial

**2.** At one point during direct examination of the Tribal Judge by the prosecutor the following unsolicited statement was made by the Tribal Judge: "Mr. Kie [the BIA agent] had to bring it to the attention of Mr. Gallegos that he had taken the right." The prosecutor quickly shut off any inquiry into that area and no objection was made to the unsolicited statement.

court did not err in admitting ... testimony concerning Two Bulls' temporary silence following the *Miranda* warnings.

■ Of course here, the defendant does not challenge the use of testimony at trial on any request made by defendant for an attorney, but only the opening statement of the prosecutor in that regard. We are of the belief that in this atypical situation comment on the defendant's temporary post-*Miranda* silence or his request for an attorney was not grounds for a mistrial. The knowing exercise of defendant's right to consult with an attorney before answering questions may refute the inference that any later statement made was involuntary.

■ In any event, from a thorough review of the record herein we are convinced that, even if the comment was improper in some way, any error was harmless beyond a reasonable doubt. *United States v. King, supra* at 360; *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), *reh. denied* 386 U.S. 987, 87 S.Ct. 1283, 18 L.Ed.2d 241 (1967). The comments were made at the very beginning of the trial in opening statement. The matter was not mentioned again before the jury until the defendant brought it up himself. The evidence against defendant was substantial, if not overwhelming. The comments were not made by the government in closing argument and they were not fresh in the minds of the jurors as in *United States v. Arnold,* 425 F.2d 204 (10th Cir. 1970) and *United States v. Nolan,* 416 F.2d 588 (10th Cir.1969) *cert. denied,* 396 U.S. 912, 90 S.Ct. 227, 24 L.Ed.2d 187 (1969).

The convictions of defendant are AFFIRMED.