**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Gerardo VALENCIA,
Defendant-Appellant.**

No. 84-1052.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 15, 1985.

Decided Oct. 8, 1985.

John Stephen Graham, Asst. U.S. Atty., Christopher Locke, San Francisco, Cal., for plaintiff-appellee.

Irwin G. Lichter, Miami, Fla., for defendant-appellant.

Before FLETCHER, BOOCHEVER, and NORRIS, Circuit Judges.

FLETCHER, Circuit Judge:

Gerardo Heber Valencia appeals from his conviction for conspiracy to distribute cocaine, 21 U.S.C. § 846 (1982), and distribution of cocaine, 21 U.S.C. § 841(a)(1) (1982). He challenges three rulings by the trial court: (1) admitting testimony that following his arrest, Valencia refused to sign a form waiving his *Miranda* rights; (2) permitting a DEA agent to testify concerning his interpretation of the word "paperwork" as it was used in a monitored telephone conversation involving Valencia; and (3) delivering its primary charge to the jury, including its instruction concerning the presumption of innocence, *prior* to the closing arguments by counsel. This court has jurisdiction under 28 U.S.C. § 1291 (1982). We affirm.

## FACTUAL BACKGROUND

On September 4, 1983, Joseph Cusanelli, Larry Fuls, and four other men were arrested at the Van Ness Holiday Inn in San Francisco when they attempted to sell 50 kilograms of cocaine to undercover FBI and DEA agents for $2,725,000. After the arrest, Cusanelli identified Valencia as the source of the cocaine. Valencia was arrested later that same day at the Travelodge near San Francisco's Fisherman's Wharf.

Cusanelli testified in great detail concerning a series of cocaine transactions in which Valencia, who resides in Florida, allegedly supplied large quantities of cocaine to Cusanelli and Fuls for distribution in their cocaine trafficking operation on the West Coast. The September 4, 1983 attempted sale was the last and by far the largest in this series of transactions. Although Cusanelli's credibility was challenged because he had entered into a favorable plea agreement with the government, his testimony was fully corroborated by telephone, airline, and hotel records confirming that Valencia had traveled to California and contacted Cusanelli and Fuls at all the critical times when Cusanelli maintained the transactions occurred. It was also supported by the ledger Fuls and Cusanelli maintained in their cocaine trafficking business, which reflected all the transactions that Cusanelli claimed had occurred, although it did not contain Valencia's name.

Moreover, on the day he was arrested, Valencia had on his person Fuls's current home and business telephone numbers, along with a home telephone number for Fuls that was four months out of date, and three telephone numbers for Cusanelli— two in Florida and one in California. He had placed two separate calls to Fuls and Cusanelli just hours after the sale of the 50 kilograms was scheduled to occur. After the attempted sale occurred and Cusanelli was arrested, Cusanelli made a monitored telephone call to Valencia at the Travel-

odge and said to him "[w]e're done," and Valencia responded that he wanted to "see ... the paperwork and everything"; Cusanelli testified at trial that he and Valencia always used the term "paperwork" in their telephone discussions as a code word to signify money. DEA Special Agent Neal Van Horn also testified at trial, over Valencia's objection,[1] that the term "paperwork" is commonly used by individuals involved in narcotics transactions to refer to money. Valencia's girlfriend, who was sharing a room with him at the Travelodge, testified that at the time he was arrested, Valencia was waiting to meet Cusanelli because Valencia "was supposed to get some money from him."

At trial, FBI Special Agent Thomas Carlon testified that following Valencia's arrest, Carlon requested Valencia to sign a standard waiver form enumerating his *Miranda* rights, but Valencia refused. However, according to Carlon, Valencia then made a series of exculpatory statements, commenting that he "wasn't involved in any cocaine trafficking and ... had merely come to San Francisco to sightsee," and that he had called his girlfriend in Los Angeles, who joined him in San Francisco. Valencia objected to Carlon's testimony about the waiver form, contending that it constituted "an impermissible comment on [Valencia's] assertion of constitutional rights after arrest [and] serv[ed] no relevant purpose whatsoever." The government maintains that it introduced Carlon's testimony merely to "lay[ ] the foundation for the admissibility of [Valencia's] subsequent statements to Carlon"; the government was seeking to establish that Valencia had been informed of his rights and to "anticipate[ ] an argument by defense counsel [which was never made] that having failed to sign the form[, Valencia] had, in fact, invoked his right to remain silent."

The trial court overruled Valencia's objection, and admitted Carlon's testimony.

Following the presentation of all the evidence at Valencia's trial, but prior to closing arguments by counsel, the trial court delivered its primary charge to the jury concerning the elements of the crimes with which Valencia was charged and the principles of reasonable doubt, the presumption of innocence, and the burden of proof. After the closing arguments, the court did not repeat these instructions in their entirety, but merely explained the mechanics of how the jury should deliberate and arrive at its verdict. Valencia did not object at the time, but now claims that the trial court's actions violated Federal Rule of Criminal Procedure 30[2] and constituted "plain error." He claims that it was prejudicial for "the prosecutor's closing rebuttal argument ... [to be] the last impression left with the jury" before they began their deliberations, rather than the court's instructions concerning the applicable law and the presumption of innocence.

## ANALYSIS

In his appeal, Valencia challenges the admission of Carlon's testimony about Valencia's refusal to sign the *Miranda*-waiver form, the admission of Van Horn's testimony about Valencia's use of the word "paperwork" in his telephone discussion with Cusanelli, and the timing of the trial court's primary charge to the jury. We agree with Valencia that the trial court erred in permitting Carlon's testimony concerning Valencia's refusal to sign the *Miranda*-waiver form. However, we conclude that in light of the extremely strong and detailed case against Valencia, that error was "harmless beyond a reasonable doubt," and therefore does not provide a basis for reversal. We find the remaining

---

**1.** On appeal, Valencia challenges the trial court's admission of Agent Van Horn's testimony, contending that the testimony transformed a seemingly innocuous conversation involving a word that has a number of common meanings into a coded conversation about narcotics. He argues that this was extremely prejudicial, and that the jury should have been permitted to

listen to the recorded conversation and formulate their own conclusions.

**2.** Federal Rule of Criminal Procedure 30 provides that "... the [trial] court shall instruct the jury *after* the [closing] arguments are completed." Fed.R.Crim.P. 30 (emphasis added).

errors claimed by Valencia to be, at most, harmless, and therefore affirm Valencia's conviction.

### 1. Testimony Concerning Valencia's Refusal To Sign The Waiver Form '

The Supreme Court and this court have consistently held that "it is impermissible to penalize an individual for exercising his fifth amendment privilege [to remain silent] when he is under police custodial interrogation," and that as a result, prosecutors "may not ... use at trial the fact that [a defendant] stood mute or claimed his privilege in the face of accusation." *Miranda v. Arizona*, 384 U.S. 436, 468 n. 37, 86 S.Ct. 1602, 1625 n. 37, 16 L.Ed.2d 694 (1966); *accord, United States v. Branson*, 756 F.2d 752, 753–54 (9th Cir.1985); *Quigg v. Crist*, 616 F.2d 1107, 1110 (9th Cir.), cert. denied, 449 U.S. 922, 101 S.Ct. 323, 66 L.Ed.2d 150 (1980); *United States v. Wycoff*, 545 F.2d 679, 681 (9th Cir.1976), cert. denied, 429 U.S. 1105, 97 S.Ct. 1135, 51 L.Ed.2d 556 (1977); *Scarborough v. Arizona*, 531 F.2d 959, 961 (9th Cir.1976). "[T]he probative value of [a defendant's] pretrial silence ... [is generally] outweighed by the prejudicial impact of admitting it into evidence," *United States v. Hale*, 422 U.S. 171, 173, 95 S.Ct. 2133, 2135, 45 L.Ed.2d 99 (1975); "every post-arrest silence is insolubly ambiguous," and therefore is of "little probative force," yet it carries with it a "strong negative inference" that the defendant is guilty. *Doyle v. Ohio*, 426 U.S. 610, 617, 96 S.Ct. 2240, 2244, 49 L.Ed.2d 91 (1976); *Hale*, 422 U.S.

at 176, 180, 95 S.Ct. at 2136, 2138. Moreover, it is unfair and misleading for police officers arresting a suspect to inform him of his right to remain silent under *Miranda*, if there is no "assurance that [his] silence will carry no penalty." *Doyle*, 426 U.S. at 617–18, 96 S.Ct. at 2244–45.

██ Accordingly, it violates due process for a prosecutor to impeach a defendant's exculpatory story at trial by cross-examining him concerning his silence when he was arrested and received *Miranda* warnings. *Id.* at 610, 619, 96 S.Ct. at 2241, 2245. "In a criminal prosecution, it is an error of constitutional proportions to admit evidence that a defendant chose to exercise the right to remain silent after arrest." *Quigg*, 616 F.2d at 1110.

██ We have maintained in a number of cases that "declining to sign a *Miranda* waiver form [is equivalent to] an assertion of the right to silence...." *United States v. Boyce*, 594 F.2d 1246, 1250 (9th Cir.), cert. denied, 444 U.S. 855, 100 S.Ct. 112, 62 L.Ed.2d 73 (1979); *accord United States v. Heldt*, 745 F.2d 1275, 1278 (9th Cir.1984); *Wycoff*, 545 F.2d at 681.[3] A defendant's refusal to sign a waiver-of-rights form, such as the one Carlon asked Valencia to sign, cannot be introduced into evidence if the defendant remains silent while in custody. *See Wycoff*, 545 F.2d at 681; *United States v. Bridwell*, 583 F.2d 1135, 1138–39 (10th Cir.1978) (concluding that admission of testimony on this subject "constituted a clear infringement on defendant's privilege against self-incrimination").[4] In *Wycoff*,

---

**3.** In light of our decision in *Heldt*, agent Carlon's description of his interview with Valencia suggests that Valencia's *Miranda* rights may have been violated during the questioning session. Carlon testified that after Valencia refused to sign the *Miranda* waiver form, he acted "noncommittal" about speaking with Carlon, but subsequently answered a few of Carlon's questions. Under *Heldt*, once Valencia had refused to sign the waiver form, the "[i]nvestigating officers should clearly inform the accused that his failure to sign the waiver does not prevent statements he makes from being used against him." 745 F.2d at 1278–79. There is no indication in the record that Carlon conveyed this information to Valencia. Moreover, to the extent that Valencia intended to invoke his right

to remain silent, Carlon should not have continued to question him about the charges on which he had been arrested. *See United States v. Lopez-Diaz*, 630 F.2d 661, 664–65 (9th Cir.1980) (holding, however, that law enforcement officers can continue to question suspect "for the limited purpose of clarifying whether the defendant is invoking his right to remain silent or has changed his mind regarding an earlier assertion of the right"). Since all the statements Valencia made to Carlon were exculpatory, there is no need to suppress them.

**4.** In *Bridwell*, the defendant was initially questioned at his office in a non-custodial situation, and voluntarily answered a number of questions. Sometime later, a government agent in-

an agent testified that when he arrested the defendant, advised him of his *Miranda* rights, and presented him with a waiver form, the defendant "refused to sign" and "said he would rather talk to an attorney" —testimony not unlike Carlon's in the present case. We noted that

> [b]y eliciting such testimony, the government put before the jury the fact that appellant remained silent and requested an attorney. The natural tendency of the use of the testimony in this manner is to prejudice the defendant by attempting to create an inference of guilt in the jury's mind.

545 F.2d at 681.

In *Wycoff,* we admonished the government that we were

> concerned and alarmed about the increasing attempts by government counsel in this circuit to make reference to or elicit testimony regarding an accused's silence at the time of arrest. Government counsel are on the verge of the precipice and jeopardizing solid cases by such practice.... In future cases government counsel must scrupulously avoid all reference to or use of an accused's assertion of his right to remain silent or his right to counsel except where permitted by established rules of law. The conduct

here, though we cannot know that it was maliciously deliberate, was reprehensible nevertheless.

545 F.2d at 682; *see also Bridwell,* 583 F.2d at 1139 (expressing "concern over the seriousness of the error [in admitting testimony concerning the defendant's refusal to sign a waiver form] at trial").[5]

■ The only exception to the proscription against testimony that defendants have invoked their *Miranda* rights following arrest is recognized in cases where shortly after invoking their rights, defendants have confessed or made incriminating statements. *See United States v. Two Bulls,* 577 F.2d 63, 66 (8th Cir.) (per curiam) (testimony concerning defendants' exercise of their *Miranda* rights can only be admitted into evidence "[i]n certain atypical situations," but such a situation is presented when the defendant has made "a later inculpatory statement"), *cert. denied,* 439 U.S. 931, 99 S.Ct. 322, 58 L.Ed.2d 326 (1978). In such cases, the prosecution must establish that the confession or incriminating statement was made voluntarily before it can be admitted into evidence, and the jury is expected to consider evidence on the issue of voluntariness in determining what weight to give to the confession. *See* 18 U.S.C. § 3501 (1982).[6]

formed the defendant of his *Miranda* rights and asked if he would sign a form waiving those rights; the defendant refused and subsequently made no further statements to the authorities. 583 F.2d at 1138. The defendant remained silent during the entire period of his custodial interrogation as defined under *Miranda.* As a result, his refusal to sign the waiver form was totally separate from the statements he made to law enforcement personnel, and could shed no light upon the voluntariness or veracity of those statements.

5. A number of courts have suggested that law enforcement officials are always permitted to testify on direct examination concerning the circumstances of the defendant's arrest and the fact that he was advised of his *Miranda* rights at the time. *See United States v. Whitley,* 734 F.2d 1129, 1135 (6th Cir.1984); *United States v. Jonas,* 639 F.2d 200, 205 (5th Cir.1981); *United States v. Warren,* 578 F.2d 1058, 1073 (5th Cir. 1978), *cert. denied,* 446 U.S. 956, 100 S.Ct. 2928, 64 L.Ed.2d 815 (1980). As the Sixth Circuit has indicated, "testimony on direct examination by a government witness that a defendant had been

given the *Miranda* rights, followed by neither questions as to what defendant said nor by testimony concerning that defendant's failure to make statements after the giving of said rights, does not constitute improper comment upon that defendant's right to remain silent," and therefore would not provide a basis for reversal. *Whitley,* 734 F.2d at 1135 (citations omitted); *accord Jonas,* 639 F.2d at 205 & n. 8; *Warren,* 578 F.2d at 1073; *but see United States v. Two Bulls,* 577 F.2d 63, 66 (8th Cir.) (per curiam) ("[T]he detailed conversation relating to *Miranda* warnings ordinarily ought not be admitted into evidence if no statement is given."), *cert. denied,* 439 U.S. 931, 99 S.Ct. 322, 58 L.Ed.2d 326 (1978).

6. Section 3501 provides that if the voluntariness of a defendant's confession is at issue, the trial judge must determine, out of jury's presence, that the confession was voluntarily made; once he has made such a determination, he "shall permit the jury to hear relevant evidence on the issue of voluntariness." 18 U.S.C. § 3501. If the defendant does not contest the voluntariness

Thus, testimony indicating that a defendant fully understood his *Miranda* rights and freely exercised them prior to making a confession is relevant foundation evidence that the jury should be permitted to consider. Moreover, if a defendant has already confessed or has made other incriminating statements, he will not be significantly prejudiced by testimony that he invoked his *Miranda* rights prior to making those statements.

Thus, in this limited set of cases, this court and others have permitted testimony that a defendant exercised his *Miranda* rights. *See United States v. Masters*, 612 F.2d 1117, 1122 (9th Cir.1979) (permitting testimony that defendant had "express[ed] ... his intention to remain silent during Customs questioning" in order to demonstrate that his subsequent incriminating statements were made voluntarily), *cert. denied*, 449 U.S. 847, 101 S.Ct. 134, 66 L.Ed.2d 57 (1980); *United States v. De La Luz Gallegos*, 738 F.2d 378, 383 (10th Cir.) (admitting testimony that defendant requested an attorney prior to making unsolicited, self-incriminating statements to law enforcement officials, because "[t]he knowing exercise of defendant's right to consult with an attorney before answering questions may refute the inference that any later statement made was involuntary"), *cert. denied*, —— U.S. ——, 105 S.Ct. 574, 83 L.Ed.2d 514 (1984); *Two Bulls*, 577 F.2d at 66 (permitting testimony that after receiving *Miranda* warnings, defendant who later made inculpatory statements initially refused to give a statement, on grounds that "the knowing exercise of the privilege to remain silent may refute an inference

that a later statement was involuntary" and that testimony concerning defendant's temporary silence constituted "relevant evidence on the issue of voluntariness" under 18 U.S.C. § 3501(a)).

However, when the defendant's subsequent statements are *exculpatory* or *innocuous*, as in Valencia's case, voluntariness is simply not an issue. In such cases, there is nothing to indicate that the defendant's statements were involuntarily made, and the defendant does not oppose their admission into evidence. Thus, testimony concerning the defendant's invocation of *Miranda* rights is not probative, although it is potentially highly prejudicial.

■ Unlike cases where the defendant has subsequently made inculpatory statements, in cases like Valencia's, where the defendant has made only exculpatory or innocuous statements, *Miranda*-related testimony will be far *more* prejudicial than the defendant's subsequent statements: it is the only evidence creating an inference that the defendant is guilty. *See Wycoff*, 545 F.2d at 681 (testimony about waiver form "create[s] an inference of guilt in the jury's mind"). As a result, the potential prejudicial impact of the *Miranda*-related testimony will far outweigh any possible probative value such testimony could have. *See Hale*, 422 U.S. at 173, 95 S.Ct. at 2135 (probative value of defendant's exercise of *Miranda* rights is outweighed by the prejudicial impact of admitting it into evidence). We therefore hold that the admission of such testimony violates due process. The district court erred in admitting agent Carlon's testimony that Valencia refused to sign the *Miranda*-waiver form.[7]

of his confession, the trial court is not required to conduct a hearing on the issue out of the presence of the jury. *See United States v. Yamashita*, 527 F.2d 954, 955 (9th Cir.1975) (per curiam). Nevertheless, the prosecution is entitled to present testimony on the voluntariness issue so that the jury can determine the weight to give to the confession. *See id.*; 18 U.S.C. § 3501.

7. In both *Wycoff* and *Bridwell*, the district courts gave forceful cautionary instructions to the jury immediately after the testimony concerning the defendant's refusal to sign the *Mi-*

*randa*-waiver form, and in *Wycoff*, the trial judge gave a similar instruction in his final charge. *See Wycoff*, 545 F.2d at 681–82; *Bridwell*, 583 F.2d at 1138–39. The trial judge's decision in the present case not to give such an instruction may have been a tactical choice to avoid focussing the jury's attention on agent Carlon's potentially impermissible testimony. *See generally Branson*, 756 F.2d at 753 (defendant chooses not to object to avoid focussing jury's attention on his silence). We need not evaluate this tactical decision in light of our

### 2. Valencia's Remaining Claims

■ Valencia's two remaining claims are largely without merit. The testimony by agent Van Horn concerning the meaning of the word "paperwork" during Valencia's monitored conversation with Cusanelli was merely cumulative: Cusanelli had previously testified that the two men always used the term to signify money in their telephone conversations. As a result, Van Horn's testimony provided, at most, indirect corroboration for Cusanelli's testimony. Moreover, in his cross-examination of agent Van Horn, Valencia's attorney skillfully extracted a series of concessions from Van Horn that Cusanelli and Valencia could have been referring to a variety of items when they used the word "paperwork," including financial documents; Valencia's counsel also had ample opportunity to dispute Van Horn's proferred interpretation in his closing argument. *See United States v. Smith,* 519 F.2d 516, 521 (9th Cir.1975); *United States v. McCoy,* 539 F.2d 1050, 1062 (5th Cir.1976), *cert. denied,* 431 U.S. 919, 97 S.Ct. 2185, 53 L.Ed.2d 230 (1977). Thus, even if there was not sufficient foundation for agent Van Horn to testify as an expert or lay witness concerning the terminology customarily employed in cocaine transactions, *see United States v. Fleishman,* 684 F.2d 1329, 1335–36 (9th Cir.), *cert. denied,* 459 U.S. 1044, 103 S.Ct. 464, 74 L.Ed.2d 614 (1982); *see also United States v. Rogers,* 769 F.2d 1418, 1425 (9th Cir.1985), we conclude that his testimony concerning the term "paperwork" did not prejudice Valencia's defense.

■ Valencia's claim that the timing of the trial court's primary charge to the jury violated Federal Rule 30 is also without merit. This court has held that a trial court's violation of Rule 30 constitutes reversible error only if it results in actual prejudice to the defendant. *See United States v. McCown,* 711 F.2d 1441, 1452 (9th Cir.1983); *United States v. Abushi,* 682 F.2d 1289, 1303 (9th Cir.1982); *United States v. Harvill,* 501 F.2d 295, 296–97 (9th Cir.1974). In the present case, Valencia does not contend that the trial court's instructions were "misleading or inadequate" in any way, *United States v. Pazsint,* 703 F.2d 420, 424 (9th Cir.1983), or that they omitted any essential information; his challenge is based exclusively upon the time at which they were given. Valencia does not contend that his counsel's argument would have been any different had it been delivered *prior* to the trial court's primary charge to the jury. Moreover, in its final instructions to the jury, following the parties' closing arguments, the trial court reiterated the principle that the burden was on the government to prove its case beyond a reasonable doubt. As a result, even though the timing of the district court's primary charge did not comply with Rule 30,[8] we cannot conclude that this resulted in actual prejudice to Valencia.[9]

### 3. Harmless-Error Analysis

■ Although the district court erred in permitting agent Carlon to testify concerning Valencia's refusal to sign the *Miranda*-waiver form, and although such an error will in many cases require reversal of a conviction, in light of the powerful oral testimony and documentary evidence linking Valencia to the Fuls-Cusanelli cocaine conspiracy, we conclude that the error in this case was "harmless beyond a reasonable doubt." *See Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967); *Wycoff,* 545 F.2d at

---

conclusion that the admission of Carlon's testimony was harmless error.

**8.** We note in passing that if a district court wants to deliver its primary charge to the jury prior to closing arguments by counsel, the best and most simple approach for it to follow is to obtain a stipulation signed by both parties agreeing to this procedure and waiving any possible Rule 30 claims.

**9.** The one case cited by Valencia in which a district court was reversed for the "timing" of its jury instructions, *United States v. Dilg,* 700 F.2d 620 (11th Cir.1983), involved a trial in which the district court never technically instructed the jury concerning the presumption of innocence once it had been officially constituted; it only read such an instruction prior to jury selection. *Id.* at 621–22, 624–25.

682; *Bridwell*, 583 F.2d at 1139. Moreover, even were we to assume that the district court also erred in admitting agent Van Horn's testimony concerning the use of the term "paperwork" in the telephone conversation between Valencia and Cusanelli, our conclusion would be the same.

AFFIRMED.