977 F.2d 594
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Patrick Russell WAYNE, Defendant-Appellant.
 No. 91-10547.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Sept. 15, 1992.
Decided Oct. 22, 1992.
 
 Before CHOY, ALARCON and CYNTHIA HOLCOMB HALL, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Patrick Russell Wayne appeals his conviction on one count of possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and his sentence of 15 years imprisonment pursuant to 18 U.S.C. § 924(e). The district court had jurisdiction under 18 U.S.C. § 3231, and this Court has jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742. We affirm.
 
 
 3
 * We first consider whether the district court erred in denying Wayne's motion to suppress evidence. We review the district court's denial of a suppression motion de novo. United States v. Limatoc, 807 F.2d 792, 794 (9th Cir.1987) (citing United States v. Andrade, 784 F.2d 1431, 1433 (9th Cir.1986)).
 
 
 4
 Wayne first argues that the officers unconstitutionally stopped the car in which he was travelling. Although Wayne acknowledges that the driver of the car actually stopped it with no police contact, he argues that "for all practical purposes, he was actually stopped" because the police fully intended to stop the car.
 
 
 5
 Law enforcement officials have not stopped or "seized" a person within the meaning of the Fourth Amendment until, under the particular circumstances, a reasonable person would believe that he was not free to leave. United States v. Mendenhall, 446 U.S. 544, 554 (1980). An officer's subjective intention to detain a person "is irrelevant except insofar as that may have been conveyed" to the detainee. Id. at n. 6; see United States v. Woods, 720 F.2d 1022, 1026 (9th Cir.1983).
 
 
 6
 Officer Webb followed Wayne and his associates in an unmarked car; Wayne cannot claim that any show of authority influenced the driver's decision to pull into a parking lot and stop the car. That Webb intended to have another officer make a routine traffic stop of the car, and that Officer Thompson intended to stop the car despite the fact that no traffic violations were noted, is irrelevant. Wayne had no knowledge that the police had any interest in him whatsoever until after the car had already stopped and he had stepped out. The vehicle's independent stop while followed by police is not by any stretch of the imagination a stop restricted by the Fourth Amendment.
 
 
 7
 Wayne argues that after he was out of the car, the officers lacked probable cause to stop him and search him. A law enforcement official need not have the same quantum of evidence required to arrest a person in order to detain a person and subject him to a limited search for weapons. "[T]he police can stop and briefly detain a person for investigative purposes if the officer has reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." United States v. Sokolow, 490 U.S. 1, 7 (1989) (citing Terry v. Ohio, 392 U.S. 1, 30 (1968)). Police may perform a limited search for weapons upon belief that the person detained "may be armed and presently dangerous" if a reasonable person under the circumstances "would be warranted in the belief that his safety or that of others was in danger." Terry, 392 U.S. at 30, 27.
 
 
 8
 Here, Webb was patrolling a high crime area when he observed Wayne and his associates in the car acting in a manner that aroused Webb's suspicion: backing into a parking space at the empty end of a parking lot across from a bank, remaining in the parked car rather than getting out and going about their business, gesturing toward the bank and a police car, and driving off when the police car entered the parking lot. Officer Thompson knew Webb suspected the car's occupants of criminal activity. He saw Wayne attempting to gain entry to a car that he couldn't unlock. Any suspicion that might have been dispelled by Wayne's cooperation in showing him identification and explaining that the keys were locked in the car would have intensified sharply when Webb shouted that the car's other occupants had a gun. Wayne's sudden arm movements reinforced his concern. While Wayne might have been raising his hands in submission, he might just as easily have been reaching for a gun. We conclude that these facts gave rise to a reasonable suspicion of criminal activity and a reasonable fear that Wayne, like the car's other occupants, might have been armed.
 
 
 9
 Wayne argues that at best, any grounds to search him arose by virtue of his association with the car's other occupants, and that mere association with others suspected of criminal activity is insufficient to establish probable cause. See United States v. Hillison, 733 F.2d 692 (9th Cir.1984). As discussed above, however, only reasonable suspicion was required to justify the brief stop and frisk that occurred here. "[T]he level of suspicion required for a Terry stop is obviously less demanding" than that required for an arrest, Sokolow, 490 U.S. at 7 (citation omitted), the situation which Hillison addressed. There was no Fourth Amendment violation, and the district court correctly denied Wayne's motion to suppress.
 
 II
 
 10
 We next address Wayne's claims that the district court admitted irrelevant and prejudicial evidence at trial. Wayne claims that Webb's testimony about the activities in the car, combined with the reading of his certificate of conviction for armed robbery to the jury, allowed the jury to assume that Wayne was in the parking lot to commit an armed bank robbery, and was highly pejudicial. Wayne's lawyer failed, however, to object to the introduction of this evidence at trial. Accordingly, we review for plain error. United States v. Gomez-Norena, 908 F.2d 497, 500 (9th Cir.), cert. denied, 111 S.Ct. 363 (1990); United States v. Morris, 827 F.2d 1348, 1350 (9th Cir.1987), cert. denied, 484 U.S. 1017 (1988).
 
 
 11
 The short answer to Wayne's argument is that any error, if error there were, did not give rise to prejudice of such magnitude as to create a probability that it materially affected the jury's verdict. See United States v. Bosch, 951 F.2d 1546, 1548 (9th Cir.1991), cert. denied, 112 S.Ct. 2975 (1992). The issue of possession in this case was straightforward. This was not a case involving constructive possession, or circumstantial evidence from which possession must be inferred. The prosecution presented direct, unrebutted evidence of Wayne's actual physical possession of a gun: Officer Thompson's eyewitness testimony that he saw and took from Wayne a gun that was strapped to Wayne's body in a shoulder holster. Given this evidence, it is difficult to conceive of a jury being prejudiced by Webb's statements that he observed the car's other occupants passing items amongst themselves, he saw the driver specifically point toward the bank, and he decided to follow the car when it left.
 
 
 12
 Federal Rule of Evidence 403 only "requires" a judge to undertake an analysis of prejudice and probative value, United States v. Bailleaux, 685 F.2d 1105, 1111 (9th Cir.1982), when invoked by a party, see Gomez-Norena, 908 F.2d at 500. In any case, the district court need not mechanically recite the Rule 403 formula on the record before admitting evidence. United States v. Green, 648 F.2d 587, 592-93 (9th Cir.1981). So long as it appears from the record that the trial judge adequately weighed the probative value and prejudicial effect of the evidence, the determination to admit evidence is committed to the court's sound discretion. Id.
 
 
 13
 In assessing whether the prejudicial impact of evidence outweighs its probative value, a court must consider, among other things, the need for the evidence to prove a particular point. Bailleaux, 685 F.2d at 1112. The government had the right to prove that Wayne had a prior felony conviction,[1] and the district court determined that the form of proof offered, a certified copy of Wayne's conviction, was not more prejudicial than probative. The court did not permit counsel to discuss the nature of the crime or any of the surrounding circumstances, and required that Wayne's plea agreement be redacted from the document.
 
 
 14
 The evidence against Mr. Wayne is overwhelming, and leaves small room to doubt that Webb's remarks, and the government's reading of his prior conviction, did not unfairly affect the jury verdict. We conclude that no plain error was committed.
 
 III
 
 15
 Wayne next argues that the district court erred by permitting Thompson to testify that Wayne admitted he had a weapon without inquiring into the voluntariness of Wayne's statement. Wayne neither requested a voluntariness hearing nor objected to Thompson's testimony at trial; he contends that the court's failure to raise the issue sua sponte constitutes plain error because the facts raised a question of voluntariness.
 
 
 16
 A defendant is entitled to have the trial judge determine the voluntariness of any self-incriminating statement before it is admitted into evidence. 18 U.S.C. § 3501(a) (1988). This right is waived, however, if the defendant fails to raise it. United States v. Valencia, 773 F.2d 1037, 1041-42 n. 6 (9th Cir.1985); United States v. Smith, 638 F.2d 131, 133 (9th Cir.1981); United States v. Yamashita, 527 F.2d 954, 955-56 (9th Cir.1975) (per curiam).
 
 
 17
 The absence of Miranda warnings does not raise a question of voluntariness, because such warnings are not required during an investigatory detention. Berkemer v. McCarty, 468 U.S. 420, 439-40 (1984); United States v. Hudgens, 798 F.2d 1234, 1237 (9th Cir.1986); Woods, 720 F.2d at 1026, 1029. Similarly, the use of some force to effect an arrest does not render an encounter so oppressive and coercive as to require Miranda warnings, much less impair the voluntariness of a statement. Cf. United States v. Baron, 860 F.2d 911, 915 (9th Cir.1988), cert. denied, 490 U.S. 1040 (1989); United States v. Buffington, 815 F.2d 1292, 1300 (9th Cir.1987). Here, the frisk and physical contact that occurred was limited; there is no evidence or suggestion that Thompson mishandled Wayne or used excessive force. The contact occurred at midday in an open, public area, raising no inference of intimidating secrecy. Finally, the trial judge offered Wayne an opportunity to dispute the voluntariness of his statement, which Wayne refused. Under these circumstances, failure to inquire into the voluntariness of Wayne's admission was not plain error.
 
 IV
 
 18
 Wayne alleges numerous errors and omissions by his trial counsel, cumulatively denying him effective assistance of counsel in violation of the Sixth Amendment. We conclude that counsel's poor performance resulted in no prejudice to Wayne; his claims thus fail to make out a constitutional violation.
 
 
 19
 As a threshold issue, we note that Wayne may raise this claim and we may decide it on direct appeal, rather than await collateral attack, because the record is sufficiently complete to permit review. United States v. O'Neal, 937 F.2d 1369, 1376 (9th Cir.1990); United States v. Wagner, 834 F.2d 1474, 1482 (9th Cir.1987).
 
 
 20
 Strickland v. Washington set forth the showing Wayne must make to demonstrate that counsel's performance was so poor as to comprise a constitutional violation: deficient performance, and prejudice to the defense--a reasonable probability that but for the errors, the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 687, 694 (1984). Where circumstances show particularly egregious errors, prejudice may be presumed. Id. at 692; United States v. Cronic, 466 U.S. 648, 658-59 (1984). On the other hand, where evidence of guilt is substantial, counsel's ineffective performance will rarely be considered prejudicial. Magill v. Dugger, 824 F.2d 879, 888 (11th Cir.1987); see Toomey v. Bunnell, 898 F.2d 741, 743-44 (9th Cir.1990).
 
 
 21
 Although counsel's performance in this case has little to recommend it, we cannot say that there was "an actual breakdown of the adversarial process" from which we may presume prejudice. See Cronic, 466 U.S. at 657. The trial judge conducted a suppression hearing to determine probable cause. The failure to conduct a voluntariness hearing and to exclude Webb's extraneous testimony were not prejudicial, as discussed previously. The trial judge refused to let the jury know that Wayne was being charged as a career criminal offender. He prevented the introduction of evidence showing four, rather than one, prior convictions, and limited the evidence the government could introduce regarding the nature and circumstances of Wayne's prior convictions. Wayne's attorney cross-examined the government's witnesses, and argued the evidence to the jury in closing.
 
 
 22
 The benchmark of a meritorious ineffective assistance of counsel claim is a performance so poor that "the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686. The conviction of possession was neither unreliable nor unjust. The facts compel the conclusion that the evidence of guilt was simply too strong for there to be a reasonable probability that counsel's performance altered the verdict. Accordingly, we conclude there was no violation of Wayne's constitutional right to counsel.
 
 V
 
 23
 Finally, Wayne argues that the district court erred in sentencing him under 18 U.S.C. § 924(e). Wayne argues that the United States Sentencing Guidelines define which prior convictions count and how they are counted for purposes of applying section 924(e). Since his four prior sentences would be treated as one sentence under section 4A1.1 of the Guidelines, Wayne argues that he does not have three prior convictions "committed on occasions different from one another" within the meaning of the statute. See 18 U.S.C. § 924(e) (1988). We review the trial court's application of a sentencing statute de novo. United States v. O'Neal, 937 F.2d 1369, 1371 (9th Cir.1990); United States v. Kemp, 938 F.2d 1020 (9th Cir.1991).
 
 
 24
 If section 924(e) required a sentence different than that set by the Sentencing Guidelines, the statute would control. United States v. Sharp, 883 F.2d 829, 831 (9th Cir.1989) (citations omitted). The sentencing guidelines themselves so provide. See U.S.S.G. Guidelines Manual § 5G1.1(b) (1991). But we do not find a conflict between the Sentencing Guidelines and section 924(e).
 
 
 25
 Sentencing Guideline section 4B1.4, the Armed Career Criminal guideline, implements section 924(e). U.S.S.G. Guidelines Manual § 4B1.4 comment. (backg'd) (1991) (emphasis added ). The Guidelines do not purport to determine whether section 924(e) applies. Section 4B1.4 simply provides that "[a] defendant who is subject to " sentence enhancement under section 924(e) shall have a specified offense level and criminal history category. U.S.S.G. § 4B1.4(a) (1991) (emphasis added ). There is no indication that the definitions in section 4A1.2(a) and application note 3, under which Wayne's prior sentences would count as one prior sentence in determining his criminal history, apply in determining whether he "is subject to" section 4B1.4 of the Guidelines and section 924(e) of Title 18. There are several indications to the contrary.
 
 
 26
 First, the Criminal History definition, which determines when "related" sentences are treated as a single sentence, explicitly states that it applies "for purposes of" determining criminal history points under section 4A1.1. U.S.S.G. § 4A1.2(a)(2) (1991). It does not mention that it applies under any other guideline.
 
 
 27
 Second, the Career Offender guideline contains its own definitions; where it adopts section 4A1.2's treatment of related convictions, it does so expressly. See U.S.S.G. § 4B1.2(3) & comment. (n. 4) (1991). This suggests that other guidelines would expressly incorporate the 4A1.2 definitions if that were intended.
 
 
 28
 Third, the Armed Career Criminal guideline application notes expressly point out that several 4A1.2 definitions are not applicable to the determination of whether a defendant is an Armed Career Criminal under section 924(e). U.S.S.G. § 4B1.4 comment. (n. 1) (1991) (emphasis added ). The notes also point out that the predicate offense definitions in section 4B1.1, used to classify a Career Offender, are different from the statutory definitions that subject a defendant to sections 924(e) and 4B1.4 as an Armed Career Criminal. Id.
 
 
 29
 We conclude that section 4B1.4 does not incorporate section 4A1.2's definition of "related" sentences in determining whether a defendant is subject to sentence enhancement under its provisions, and that the Guidelines do not displace section 924(e) and case law interpreting it. Accordingly, we need not reconsider the holding in United States v. Antonie, 953 F.2d 496 (9th Cir.1991), petition for cert. filed, (U.S. May 26, 1992) (No. 91-8524).
 
 
 30
 Appellant's conviction and sentence are AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this Circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Mr. Wayne refused to stipulate to his prior conviction, which would have avoided the possibility of prejudice from the government's proof of this fact